IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAL HART, | : | CIVIL ACTION NO. **3:CV-08-0828** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WALTER WHALEN, et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

Plaintiff, Jamal Hart, currently an inmate at the Federal Correctional Institution at Loretto ("FCI-Loretto")[1], filed this *Bivens* civil rights action, pursuant to 28 U.S.C. § 1331, on May 5, 2008. (Doc. 1). Plaintiff names as Defendants eight (8) individuals of the Federal Bureau of Prisons ("BOP"), six (6) are employed at FCI-Schuylkill and two (2) are BOP officials. (Doc. 1). Plaintiff also initially filed Motions to proceed *in forma pauperis* (IFP). (Docs. 2 and 6). On June 3, 2008, this Court denied Plaintiff's IFP motion and required that Plaintiff pay a partial

---

1.   Plaintiff was formerly incarcerated at FCI-Schuylkill during the relevant times of the case at bar. Plaintiff was later transferred to FCI-Loretto, his current place of confinement. (Doc. 61).
    Previously, on December 26, 2006, inmate Hart, while an inmate at FCI-Schuylkill, Minersville, Pennsylvania, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 with this Court. *See Hart v. Holt*, Civil No. 06-2468, M.D. Pa. Inmate Hart claimed that the sentencing court relied on a "fabricated non-existent 1995 assault predicate conviction" to enhance his sentence under the ACCA pursuant to § 924(e). Hart claimed that the sentencing court improperly considered his 1995 assault conviction in imposing his sentence under the ACCA when this conviction does not exist. On January 23, 2007, we issued a Report and Recommendation and recommended that Hart's Petition for Writ of Habeas Corpus be dismissed for lack of jurisdiction. On February 26, 2007, the District Court issued an Order and dismissed Hart's Petition for Writ of Habeas Corpus.

filing fee based on the balance in his inmate account, which was paid on June 16, 2008.  (Docs. 10 and 12, and Doc. 13, Ex. 3).

On June 30, 2008, Plaintiff filed a "Motion to Commence Complaint and for Order to Serve Summons Upon Defendants."  (Doc. 13).  In his Motion, Plaintiff stated that since he has paid the partial filing fee as directed by the Court, he requested the Court to have the Summons issued and to have the U.S. Marshal serve his Complaint on all named Defendants.

Notwithstanding Plaintiff Hart's partial payment of the filing fee, the Prison Litigation Reform Act of 1995 (the "PLRA")[2] obligates the Court to engage in a screening process.  *See Vega v. Kyler*, C.A. No. 03-1936 (3d Cir.2004) 2004 WL 229073 (Non-precedential) (if prisoner pays filing fee, civil rights complaint is subject to review under 28 U.S.C. § 1915(A)(b) and not 28 U.S.C. § 1915(e)(2)(B)).  *See also Vieux v. Smith*, 2007 WL 1650579 (M.D. Pa.).

On July 7, 2008, this Court issued an Order and denied Plaintiff's Motion (Doc. 13) as premature since the Court was currently in the process of screening Plaintiff's 30-page Complaint, with 11 attachments, under the PLRA, § 1915(A), as required.  (Doc. 14).  The Court indicated that once Plaintiff's lengthy Complaint was screened and it was determined by the Court which claims of Plaintiff could proceed and which Defendants would be served, the Court would issue the appropriate order regarding the issuance of the Summons and the service of Plaintiff's Complaint.

Subsequently, Plaintiff paid the remainder of the full filing fee.  (Doc. 15).

---

2.   Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

Therefore, we must now screen Plaintiff 's pleading.  As stated, Plaintiff attached several exhibits to his 30-page Complaint.[3]

## II. PLRA.

The PLRA  obligates the Court to engage in a screening process.  Specifically, as noted, even though Plaintiff paid the full filing fee for his civil rights action, we must still screen his Complaint pursuant to 28 U.S.C. §1915A.  *See Vega,* 2004 WL 229073.

Section 1915A provides:

> **(a) Screening**.- The court shall review, before docketing if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**.- On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

>> **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

>> **(2)** seeks monetary relief against a defendant who is immune from such relief.

A Complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The Court uses the same standard of review under 28 U.S.C. §1915(e)(2)(B) as a Rule 12(b)(6) motion.  *Grayson v. Mayview State Hosp.*, 293 F. 3d 103, 110 (3d Cir. 2002); *Sharpe v. Costello*, 2007 WL 1098964, *3 (M.D. Pa. 2007).

---

3. We note that in screening a prisoner's complaint under the PLRA, the Court can  consider exhibits attached to the complaint.  *Hughes v. Kostingo*, 2006 WL 367890 * 2 (W.D. Pa.).

In reviewing the Complaint under 28 U.S.C. §1915A(b), we find that the Plaintiff does not state the following claims: a First Amendment retaliation claim, a Fifth Amendment Equal Protection claim, and a Fifth Amendment due process claim.

As mentioned, Plaintiff names as Defendants eight (8) employees of the BOP, six (6) of whom are employed at FCI-Schuylkill and two (2) of whom are BOP officials, with respect to his Constitutional claims under § 1331.  Specifically, Plaintiff names the following Defendants: Walter Whalen, Case Manager; Barry Stahl, Counselor; R. Scandle, Disciplinary Hearing Officer ("DHO"); Lt. Shelby; Lt. T. Bonnell; Warden T. R. Sniezek; D. Scott Dodrill, Regional Director of Northeast Regional Office of the Bureau of Prisons ("BOP"); and Harley G. Lappin, Director of the Bureau of Prisons.(Doc. 1, pp. 2-3).  Plaintiff states that he sues all of the Defendants in their official and individual capacities.  (Doc. 1, pp. 2-3, ¶'s 3-10).  As relief, Plaintiff requests monetary (compensatory and punitive) damages, declaratory and injunctive relief.  (Doc. 1, pp. 1, 26-29, ¶ A-F).[4]

---

4.    As stated, Plaintiff has requested, in part, monetary damages and he sues all of the defendants in their official and individual capacities.  Plaintiff cannot seek monetary damages against the federal Defendants in their official capacities.  As the Court in *Breyer v. Meissner*, 23 F. Supp. 2d 540, 544 (E.D. Pa. 1998), stated:

> To the extent that the proposed claims seek monetary damages against the United States or individual defendants in their official capacities, the claims are barred by the doctrine of sovereign immunity.  *Federal Deposit Insurance Corp. v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). Plaintiff does not allege that the United States has waived its immunity in this case. Furthermore, the Supreme Court has held that a *Bivens* action may not be brought against a federal agency. *Id.* 510 U.S. at 484-86, 114 S.Ct. at 1005-06.

4

### III.  *Bivens.*

As stated, Plaintiff has filed this action pursuant to *Bivens*.[5] (Doc. 1, p. 1).  Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*.  Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).  A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply.  *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992).  In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992); *Sharpe*, 2007 WL 1098964, *3.

### IV.  Motion to Dismiss Standard.

In considering whether a pleading states an actionable claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most

---

5 .    Recently, the Third Circuit in *Banks v. Roberts*, 2007 WL 3096585, * 1, n. 1 (3d Cir. 10-19-07) (Non-Precedential) noted that "A '*Bivens* action' is a commonly used phrase for describing a judicially created remedy allowing individuals to seek damages for unconstitutional conduct by federal officials.  This constitutional tort theory was set out in *Bivens* . . . "

favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should not

be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief."  *Conley v.*

*Gibson*, 355 U.S. 41, 44-46 (1957);  *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).  A

complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to

recover is properly dismissed without leave to amend.  *Estelle v. Gamble*, 429 U.S. 97, 107-108

(1976).

## V.  Allegations of Complaint.

Plaintiff's allegations stem from what he believes was an erroneous score of +23 points

on his Custody Classification Score ("CCS").  (Doc. 1, p. 3, ¶ 12).  Plaintiff states that an expired

August 2004 incident report incorrectly inflated his Custody Security Level to a score of + 23

points.   Plaintiff avers that on November 17, 2006, he took his inaccurate CCS to Defendant

Walter Whalen, and that Whalen "refused to rectify this overt error of an expired 8/04 incident

report that incorrectly inflated plaintiff's custody security level to a false score of +23 points."

(Doc. 1, p. 3, ¶ 13).  Plaintiff alleges he then turned to Case Management Coordinator ("CMC")

Rich Helder to assist him in setting his proper CCS, at which time CMC Helder allegedly agreed

with Plaintiff that the August 2004 incident report was "expired and need[ed] to be removed."

(Doc. 1, pp. 3-4, ¶ 14-15).[6] Plaintiff also alleges that CMC Helder ordered Defendant Whalen to

"remove it [the 8/04 incident report]  from the Custody Classification scoring and correct

_____

6.   Plaintiff did not name CMC Helder as a Defendant in this case.  (Doc. 1, p. 1).

[Plaintiff's] History of Violence section." (Doc. 1, p. 4, ¶ 15).

When Plaintiff allegedly informed Defendant Whalen of this change directed by CMC Helder with respect to his CCS, Plaintiff states that this Defendant used "profane, obscene and threatening" language,  thus forcing Plaintiff back to CMC Helder for assistance in dealing with Defendant Whalen. (Doc. 1, p. 4, ¶ 17-18).  About a month later, on December 11, 2006, CMC Helder allegedly told Plaintiff the "investigation is over and accordingly, Plaintiff is now classified as a Low Security Inmate," and he even allegedly asked Plaintiff where he wished to be transferred. (Doc. 1, p. 5, ¶ 21).  Plaintiff then was allegedly given a memorandum from CMC Helder which outlined how Plaintiff achieved his new Low Security Score. (Doc. 1, pp. 5-6, ¶23).  Plaintiff avers as follows:

> CMC Helder also informed Plaintiff that making a needed adjustment from Custody Classification Score +21 points to a Low Security Level Score +15 points, by subtracting (3) certified juvenile convictions[7] Criminal History Score making it scored at (4) instead of (10), reduced Plaintiff's Custody Security Level (6) points making Plaintiff LOW Security with-out Any Management Variables or No Public Safety Factors.

(Doc. 1, pp. 5-6).

At this time, Plaintiff avers he went back to Defendant Whalen, who informed him he knew nothing of the new Custody Score and would "get to it when he can, so don't come back

---

[7]. Plaintiff states he was informed by CMC Helder that he was looking into a reduction in points from Plaintiff's criminal history score "due to plaintiff's Court Judgment and Statement of Reasons did not count his (3) certified juvenile convictions so neither can we in accordance to this new BOP P.S. 5100.08," which outlines the criteria for calculating the Custody Score, and includes for consideration, among other things, the history of violence and criminal history of the Inmate. (Doc. 1, p. 4).

here bothering him." (Doc. 1, p. 6, ¶ 24).  On February 2, 2007, Plaintiff claims that Defendant Whalen knowingly and intentionally falsified his "Custody Classification Score from Security Low Level +15 points score to a unjustly Medium Security Level +16 points without notice ... [as] retaliation" for his complaints to CMC Helder.  (Doc. 1, p. 6, ¶ 25-26).   Plaintiff claims he became aware of this increase in his CCS around March16, 2007, when he requested a printed copy of his score to see what the delay was in his transfer to a low security prison.  (Doc. 1, p. 7, ¶ 29).  Plaintiff allegedly complained to CMC Helder that his "'Program Participation' and 'Living Skills' Scoring are erroneous, and needs to be alleviated expediently."  (Doc. 1, p. 7, ¶ 30).

About a month later, on April 19, 2007, Plaintiff "received a Code #201 (Fighting with Another) incident report #1590217," and he avers that he was later "vindictively charged for a 2nd  Offense Code #201... that was false and fabricated by [Defendant] Lt. Shelby... false incident report #1790011 or #1790101."  (Doc. 1, p. 8, ¶ 31).  Plaintiff allegedly requested staff representation at his April 26, 2007 DHO hearing with respect to the incident report charging him with the second Code #201 offense (*i.e.* incident report #1790011 or #1790101), but he avers that Defendant Barry Stahl "failed to investigate fabricated and duplicitously (sic) errorroneous (sic) evidence 2nd Code #201 Offense plaintiff was vindictively charged."  Plaintiff avers that "Defendant Stahl stood by quietly and dismissed the claim as far fetched."  (Doc. 1, p. 8, ¶ 32).  Plaintiff seems to allege that the false incident report charging him with the second Code #201 offense was used to improperly classify him as a Security Medium Custody Level and that it was done "to extremely punish Plaintiff for exercising the

Grievance process towards Defendant Whalen ... ."  (*Id*.).

Plaintiff claims that Defendant Scandle, a correctional case manager operating as DHO, deprived him of an impartial hearing on April 26, 2007, when he failed to investigate the allegedly fabricated second Code #201 violation.  (Doc. 1, p. 8, ¶33).[8]  Plaintiff alleges that Defendant Lt. Shelby signed this second Code #201 offense incident report on the same day the other separate (and the "initial") Code #201 offense incident report was signed by Defendant Lt. Bonnell.

Plaintiff also claims that he had a defense with respect to the Code #201 offense incident reports since he was "provoked while being in his assigned cell."  Plaintiff also claims that Defendant DHO Scandle found him guilty of the second incident report and unlawfully took "a total of (87) days Good Conduct Time that drastically effects Plaintiff's release date, and Loss of Visits and Phone Both for Six (6) Months."  (Doc. 1, p. 9, ¶ 36).[9]

---

8.   Plaintiff's Atts. 1 and 10 to his Complaint (Doc. 1) indicate that his DHO hearing was on April 23, 2007 regarding the April 19, 2007 incident in which Plaintiff was charged with a Code 201 offense for Fighting with Another Person.

9.   Plaintiff does not seem to challenge the first Code #201 offense (Fighting with Another) incident report #1590217 issued by Defendant Bonnell on  April 19, 2007.  To the extent that Plaintiff claims  DHO Defendant Scandle deprived him of his due process rights with respect to his April 26, 2007 disciplinary hearing and deprived him of his right to a fair and impartial hearing regarding the second Code #201 offense incident report which led to an "unlawful[] taking a total of (87) days Good Conduct Time ["GCT"] that drastically effects Plaintiff ['s] release date ... .," we note that this claim is *Heck*-barred. (Doc.1, pp. 8-9).
   Insofar as Plaintiff claims that the second Code #201 violation incident report #1790011 or #1790101 was  fabricated by Defendant Shelby to retaliate against him, and that Defendants Shelby and Bonnell conspired to fabricate the second disciplinary charge (Code #201offense) against him in violation of his Fifth Amendment due process rights (Doc. 1, p. 26, ¶ 89.), we note that the alleged filing of a false incident report does not state a Constitutional

Plaintiff also describes at length an alleged confrontation between he and Defendant Whalen on May 17, 2007, during Plaintiff's scheduled program review. (Doc. 1, p. 10, ¶'s 37-38). According to the Plaintiff, Defendant Whalen used profanity and racial slurs, and he referenced the Plaintiff's previous crimes and convictions. Defendant Whalen then told Plaintiff to leave his office and not to come back. (*Id.* ¶ 37). Plaintiff claims he responded to Defendant Whalen that "this [was] a Prison Program Review Team meeting that Plaintiff was compelled by call-out scheduled on May 17, 2007." (*Id.* ¶ 38). Defendant Whalen again allegedly became loud and profane and told Plaintiff "I personally know ALL the Federal Judges in this Middle District of Pennsylvania and NONE of them will let you win a single dime," and then threatened

---

claim.

> As the Court in *Wesley v. Dombrowski*, 2004 WL 1465650 *7 (E.D. Pa.), stated:
>
> > As an initial matter, the filing of a false or unfounded misconduct charge against an inmate does not constitute a deprivation of a constitutional right. *See Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988); *Flanagan v. Shively*, 783 F.Supp. 922, 931-32 (M.D. Pa.), *aff'd* 980 F.2d 722 (3d Cir. 1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993). There is also no constitutional right to require prison officials to investigate an inmate's grievances. *Davage v. United States*, No. Civ. A. 97-1002, 1997 U.S. Dist. LEXIS 4844, at * 9 (E.D. Pa. Apr. 11, 1997); *see also Robinson v. Love*, 155 F.R.D. 535, 5365 n. 3 (E.D. Pa. 1994) (citing cases).

*See also O'Connell v. Sobina*, 2008 WL 144199, *16 (W.D. Pa.).

Therefore, we shall recommend that Plaintiff's claim that Defendant Shelby issued a false misconduct against him be dismissed. *(See* Doc. 1, p. 24, ¶ 80., Count 2).

As will be discussed below, we also find that Plaintiff fails to state a cognizable conspiracy claim against Defendants Shelby and Bonnell. (Doc. 1, p. 26, ¶ 89.).

to "get [him] back in the Hole, personally!"  (*Id*.).

Plaintiff then outlines in his Complaint the administrative remedies he sought and the outcome of each, specifically that his Informal Complaint (¶ 42), BP-9 Complaint (¶43-45) and Appeal (¶ 46-47) were all denied.  Plaintiff's attachments to his Complaint indicate he pursued the BOP Administrative remedy process.  We do not decide at this juncture whether Plaintiff exhausted all of his BOP Administrative remedies with respect to all of his present claims since exhaustion is an affirmative defense for Defendants to raise.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Plaintiff alleges that Defendant Warden Sniezek violated his due process rights with respect to the Warden's response to Plaintiff's Administrative Remedy request (BP-9) filed on June 18, 2007, in which Plaintiff complained about Defendant Whalen's alleged failure to change his CCS and points to low level security.  (Doc. 1, pp. 12-13).  Plaintiff alleges that Defendant Warden Sniezek had "untrue and thrawartly (sic) misleading erroneous information" in his Response to Plaintiff's BP-9 request. (*Id*.).  Plaintiff also names BOP Regional Director Dodrill as a Defendant with respect to his response to Plaintiff's appeal of his grievance. (Doc. 1, pp. 13 and 25, ¶ 86.).   Further, Plaintiff names BOP Director Lappin as Defendant with respect to his review of Plaintiff's Administrative remedies.  (Doc. 1, p. 3, ¶ 10.).[10]

---

10.   As will be discussed below, since Plaintiff had no Constitutional right to a grievance process in the first place, he does not state Constitutional claims as against Defendants Lappin, Sniezek and Dodrill with respect to their responses  to his BP-9 complaints and his appeals. (Doc. 1, pp. 12-13, 16-18).

Around August 7, 2007, Plaintiff describes yet another alleged confrontation between himself and Defendant Whalen which he classifies as racial discrimination.  (Doc. 1, p. 14, ¶'s 48-49).  Upon Plaintiff's alleged request for a printout of his "History of Violence Score to see if the inaccurate (5) minor score was corrected to (1) minor score," Defendant Whelan  allegedly denied the request and again used profane and racially insensitive language.  (*Id.* ¶ 48).  It is also claimed by the Plaintiff that at this time he looked around and allegedly saw a poster of his father, Mumia Abu-Jamal[11], on the wall in Defendant Whalen's office with the phrase "He has fooled the World he is Innocent.  But He is Guilty of Murdering Police Officer Daniel Faulkner!" (*Id.* ¶ 49).  Plaintiff then alleges Defendant Whalen made comments about Plaintiff's father and more racial remarks before Plaintiff contends that he "agitatedly (sic) left."  (*Id.*).  Plaintiff claims that Defendant Warden Sniezek admitted to Plaintiff in a letter to Plaintiff's lawyer dated September 26, 2007, that "the item concerning your client's father has been removed, and Plaintiff is currently classified as a "Low" security level inmate," and he can be considered for transfer.  (Doc. 1, p. 18, ¶ 63).[12]

---

11.   We note that the Plaintiff's father is Mumia Abu-Jamal, arrested in 1981and later convicted of the murder of Officer Daniel Faulkner in Philadelphia, Pennsylvania.  Abu-Jamal was sentenced to death, but subsequently, his sentence was reduced to life imprisonment.  We also note that  Plaintiff's father, Mumia Abu-Jamal, previously filed a petition for writ of habeas corpus with this Court.  *See Abu-Jamal v. Zumpetta*, 835 F.2d 282 (Table) (C.A. 3 1987).

12.   In fact, Plaintiff was transferred to a low security prison on November 1, 2007.  Plaintiff's own exhibits show that his security designation and CCS were adjusted and that as of November 1, 2007 he was scored as a low-security inmate and was transferred to a low-security prison.  Doc. 1, Att. 11.  Thus, we find that Plaintiff's requests for injunctive relief regarding the failure of the Defendants to adjust his CCS, to change his designation to a low-security inmate, and to transfer him to a low security prison to now be moot.

Plaintiff then alleges that after Assistant CMC Mrs. Brown looked over his Custody Score, and after further review, his transfer was approved by the Designation and Sentence Computation Center in Grand Prairie, Texas.  (Doc. 1, p. 22, ¶ 72).  Plaintiff was transferred on October 29, 2007, to FCI-Loretto in Loretto, Pennsylvania, a Low-Security Institution.  Plaintiff is presently confined at FCI-Loretto.

**VI. Discussion.**

Plaintiff asserts a myriad of claims numbering 10, *i.e.* Counts 1-10.  (Doc. 1, pp. 24-26).  Since we have addressed some of Plaintiff's numerous claims above (*i.e.* Counts 2, 6, 7, 8,  9 and 10), we shall now discuss our findings with respect to these claims.

1. *Count 1, First Amendment Retaliation Claim against Defendant Whalen*

Plaintiff alleges that Defendant Whalen falsified his CCS form after he complained to Whalen's supervisor (CMC Helder) and that this constitues retaliation in violation of his First Amendment rights.  (Doc. 1, p. 24, ¶ 79.).  However, Plaintiff had no Constitutional right to any particular custody status.  *See Wilson v. Horn*, 971 F. Supp. 943, 947 (E. D. Pa. 1997).

The law is well-settled that Plaintiff has no Constitutional right with respect to being assigned any particular custody classification or being confined in any specific prison.  *See Smith v. U.S.,* 2007 WL 4270602 (M.D. Pa.).  Thus, Plaintiff Hart had no constitutional right to being classified as a low security custody level inmate and to a low-security prison transfer.

In *Wilkins v. Bittenbender*, 2006 WL 860140,  * 16 (M.D. Pa. 2006), this Court stated:

> Finally, the United States Supreme Court has held that inmates have "no legitimate statutory or constitutional entitlement" to any particular custodial classification even if a new classification would cause that inmate to suffer a "grievous loss." *Moody v. Daggett,*

429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976);
*James v. Reno,* 39 F.Supp.2d  37, 40 (D.D.C.1999) (citation omitted)
(a federal inmate "has no liberty interest in his security classification).
Consequently, Defendants are entitled to entry of summary judgment
with respect to Plaintiff's claims regarding the IFRP and the alleged
improper increase in his custody classification.

Also, as stated, Plaintiff's CCS was adjusted, he was scored as a low-security inmate, and he was transferred to a low-security prison in November of 2007.  (Doc. 1, Att. 11).   Plaintiff admits that on October 29, 2007, he was transferred out of FCI-Schuylkill and that on November 1, 2007, he arrived at FCI-Loretto, a low custody prison, his current place of confinement.   (Doc. 1, p. 22, ¶'s 73.-74.).  Thus, the alleged adverse action that was taken by Defendant Whalen of depriving Plaintiff of the correct CCS and the proper custody status was remedied.  Further, Plaintiff does not claim that he is likely to be transferred out of the low security prison where he is presently confined and there is no reasonable likelihood of this alleged wrong being repeated.

Plaintiff's requests for injunctive and declaratory relief (Doc. 1, pp. 28-29) may be moot, in part, since he is no longer incarcerated at FCI-Schuylkill and he was transferred to a low security prison, unless there is a reasonable likelihood that he will be returned to the higher security prison.  As the Court stated in *Sutton v.  Rasheed*, 323 F. 3d 236, 248 (3d Cir. 2003):

An inmate's transfer from the facility complained of generally moots
the equitable and declaratory claims. *Abdul-Akbar,* 4 F.3d at 197
(former inmate's claim that the prison library's legal resources were
constitutionally inadequate was moot because plaintiff was released
five months before trial). But these claims are not mooted when a
challenged action is (1) too short in duration "to be fully litigated
prior to its cessation or expiration"; and (2) "there [is] a reasonable
likelihood that the same complaining party would be subjected
to the same action again." *Id.* at 206; *see also Mesquite v. Aladdin's*

-14-

> *Castle Inc.,* 455 U.S. 283, 298 n. 10, 102 S.Ct. 1070, 71 L.Ed.2d
> 152 (1982). When there is a voluntary cessation of a policy, a claim
> will not be rendered moot if there remains the possibility that
> plaintiffs will be disadvantaged "in the same fundamental way."
> *Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City
> of Jacksonville,* 508 U.S. 656, 662, 113 S.Ct. 2297, 124 L.Ed.2d 586
> (1993). Instead, the dismissal of an action on mootness grounds requires
> the defendant to demonstrate that "there is no reasonable expectation
> that the wrong will be repeated." *Id.* (quotation omitted).

In *Meekins v. Beard*, 2008 WL 474250, *2 (M.D. Pa.), this Court stated that "a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge. *See Weaver v. Wilcox*, 650 F. 2d 22, 27 n. 13 (3d Cir. 1981) ('prisoner's transfer from the prison moots claim for injunctive and declaratory relief with respect to prison conditions, but not claims for damages.')." The *Meekins* Court also stated that since "it is well established that a prisoner 'has no justifiable expectation that he will be incarcerated in any particular prison'," "it is clear that injunctive relief is not warranted. *Id*. (citations omitted).

For a plaintiff to have standing to seek injunctive relief, past exposure to illegal conduct is not enough to show standing. *O'Shea v. Littleton*, 414 U.S. 488, 495, 38 L. Ed. 2d 674, 94 S. Ct. 669 (1974). Thus, since our Plaintiff is not currently confined at FCI-Shuylkill, he must show that there is a "real and immediate threat that he would again be [the victim of the alleged unconstitutional practice]." *Brown v. Fauver*, 819 F.2d395, 400 (3d Cir. 1987). It is undisputed that our Plaintiff is not currently incarcerated in FCI-Schuylkill, and he does not allege that he will again be incarcerated at this prison in the future. Thus, there is not a reasonable expectation that the wrong for which he seeks injunctive and declaratory relief with respect to his claim about his CCS will be repeated. Since there is not an immediate threat to the Plaintiff,

he does not have standing to bring his claims for injunctive and declaratory relief regarding the failure to lower his CCS and transfer him to a low security prison.

An inmate alleging retaliation must make three showings: (1) Plaintiff must show that he engaged in a constitutionally protected conduct; (2) Plaintiff must show that there was an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link must be established between the exercise of the inmate's rights and the adverse action taken against him. *Alexander v. Forr*, 2006 WL 2796412, *20-21 (M.D. Pa.) (citing *Rauser v. Horn*, 241 F.3d 333-34 (3d Cir.2001); *O'Connell, supra* at * 11.

As stated above, Plaintiff's claim of retaliation under the First Amendment is that on February 2, 2007, Defendant Whalen falsified his Custody Classification Score from +15 to +16, thereby increasing the Plaintiff from a Low Security inmate back to a Medium Security inmate, in retaliation for Plaintiff's complaints to Defendant Whalen's supervisor, CMC Helder. (Doc. 1, p. 6 ¶ 25; *Id.*, p. 24, ¶ 79).   Plaintiff has met the first element of a First Amendment retaliation claim, in that his alleged verbal complaints to Defendant Whalen's supervisor may constitute constitutionally protected conduct. See *Brightwell v. Lehman*, 2007 WL 2796412 (W.D. Pa.) (citing *Woods v. Smith*, 60 F.3d 1161 at 1165 (5th Cir.1995) (prison officials may not retaliate against an inmate for complaining about a guard's misconduct.)).

However, taking as true the Plaintiff's allegations as we must at this juncture, we do not find that  the increase of his Custody Score from 15 to 16 subjected Plaintiff to adverse action by Defendant Whalen.  In *Alexander*, this Court has determined:

-16-

> [I]n establishing the elements of a First Amendment claim of retaliation, a plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (internal citations omitted).  While mindful that the *pro se* plaintiff may not be held to a heightened burden of proof, the court should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions of prison officials and "the ease with which claims of retaliation may be fabricated." *See Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir.2001); *Cochrane v. Morris*, 73 F.3d 1310, 1317 (4th Cir.1996); *Woods*, 60 F.3d at 1166; *Colon*, 58 F.3d at 873; *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983(; *Hyson v. Corr. Med. Serv., Inc.*, No. Civ. 02-318, 2003 WL 292085, at *2 n. 1 (D.Del.2003); *Sims v. Dragovich*, No. Civ. 95-6753, 1999 WL 371621, at *3 (E.D.Pa.).

*Alexander*, 2006 WL 2796412 at *22.

Based on the exhibits  supplied by Plaintiff as Attachments[13] to his own Complaint,

Defendant Warden Sniezek found the following with respect to Defendant Whalen's alleged

retaliatory increase of Plaintiff's custody classification score:

> Upon further review, the Unit Team lowered your custody classification score to a total of 15 points on December 14, 2006, after it was determined that your Criminal History Score was incorrect.  This Correction modified your Criminal History Points to 4 from the original Criminal History Points of 10, and resulted in the decrease in your total security points.  This later decrease in your security point total to 15 points would have made you eligible for consideration for transfer to a "low"

---

13.   As noted above, the Court is permitted to review the attachments and exhibits provided by the Plaintiff with his Complaint during the  screening process under the PLRA.  *See Lum v. Bank of America*, 361 F.3d 217, 222 n. 3 (3d Cir.2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.  A document forms the basis of a claim if the document is not unfair to a plaintiff because relying on the document, the plaintiff is on notice that the document will be considered.") (internal citations omitted).

security institution.  However, the Unit Team determined that the scoring in the areas of "program participation" and "living skills" was not reflective of your actual level of program participation and adjustment at FCI, Schuylkill.  Therefore, on February 2, 2007, staff decreased the original scoring in the areas of: "program participation" and "living skills" to an overall "average" level, from the previous "good" level, as scored by FCI, Raybrook staff.  This change increased your overall security point total to 16.  FCI, Shuylkill staff used sound correctional judgment in reassessing these program areas, as you were at FCI, Shuylkill only several month, and staff could not properly assess your level of program participation, as well as your overall demeanor, attitude, personal accountability and nature of interaction with staff and other inmates.  In fact, you have not been involved in any programming at FCI, Schuylkill, even though staff, at your initial classification recommended your participation in, at least, one Adult Continuing Education or Post Secondary Education course by December 2006, and a Vocational Training course by January 2007.  Program Statement 5100.08 Inmate Security Designation and Custody Classification, dated September 12, 2006, Chapter 6, Page 10, section 2 indicates an inmate with a "good" level of program participation is an inmate who actively participate in multiple recommended programs.  Also, section 3 defines "Living Skills."  This area of scoring reflects the inmate's living kills during the past 12 months, and is based on the inmate's demeanor, attitude, personal accountability and nature of interaction with staff and other inmates.  As stated previously staff used sound correctional judgement in reassessing both of these scoring areas of your custody/classification form.

(Doc. 1, Att. 5).

This exhibit shows that there was not an "arbitrary" or "erroneous" increase in the Plaintiff's "Program Participation" or "Living Skills" scores, but rather an increase based on the standards set forth in P.S. 5100.08 Inmate Security Designation and Custody Classification. Thus, Plaintiff's own exhibits show that he was not subject to adverse action by Defendant Whalen and that Plaintiff's complaints to CMC Helder about Whalen were not a substantial motivating factor in the alleged conduct by Whalen.  Therefore, we will recommend that the Plaintiff's claim of First Amendment Retaliation against Defendant Whalen (Count 1, Doc. 1, p.

-18-

24, ¶ 79.) be dismissed.

Plaintiff also alleges that Defendant Whalen verbally threatened him and was profane. We find that the alleged verbal threats and harassment by Defendant Whalen do not rise to a Constitutional claim.  As the Court stated in *Wright v. O'Hara*, 2004 WL 1793018 (E.D. Pa.) * 7, "[w]here Plaintiff has not been physically assaulted, Defendant's words and gestures alone are not of constitutional merit."  (Citation omitted).  The *Wright* Court also stated:

> "Mean harassment . . . is insufficient to state a constitutional deprivation."  *Murray v. Woodburn*, 809 F.Supp. 383, 384 (E.D. Pa. 1993).  Verbal abuse or threats alone do not state a constitutional claim.  *See Maclean v. Secor*, 876 F.Supp. 695, 698 (E.D. Pa. 1995).  "This is so because '[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment.  *Ramos v. Vaughn*, No. 94-2596, 1995 U.S. Dist. LEXIS 2164 at *12 (E.D.Pa. June 27, 1995), *quoting Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

*Id.* * 6.

In the *Wright* case, Plaintiff alleged that the CO verbally threatened and harassed him and lunged towards him with a fist, without any physical contact.  The *Wright* Court concluded that this conduct, "while inappropriate, does not give rise to an Eighth Amendment violation as it is not 'sufficiently serious'."  *Id.* *7 (citation omitted).  Similarly, Plaintiff Hart alleges verbal harassment and being subject to racial harassment and "abusive threats" by Defendant Whalen, without  physical contact.  (Doc. 1, pp. 14-15).  Plaintiff claims that Defendant Whalen also harassed him by having a picture of his father on his office wall in order to ridicule and intimidate Plaintiff based on the political views of his father.  (*Id*., p. 25, ¶ 85.).  If true, this conduct would certainly be inappropriate, but it does not state an Eighth Amendment claim.

Thus, Plaintiff has not raised a Constitutional violation with respect to the alleged verbal abuse and harassment by Defendant Whalen.  Therefore, we find an Eighth Amendment claim has not been asserted with respect to Defendant Whalen's alleged verbal abuse  towards Plaintiff, and we will recommend that this claim (Count 7, Doc. 1, p. 25, ¶ 85.) be dismissed.

*2.  Counts 2, 3 and 4, Fifth Amendment Due Process Claims against Defendants Shelby, Stahl and Scandle*

Plaintiff alleges Defendant Shelby issued a false incident report (second Code #201 offense) against him due to Plaintiff exercising his Constitutional rights and as a result he was found guilty and punished by being confined in segregation, loss of privileges and loss of GCT in violation of his due process rights.  (Count 2, Doc. 1, p. 24, ¶ 80.).

Plaintiff alleges that Defendant Stahl, acting as his staff representative with respect to his April 2, 2007 disciplinary hearing before DHO Scandle, failed to provide assistance to him by getting evidence, "investigating documents," and "assisting Plaintiff in presenting a defense for the 2nd Disciplinary charge he recieved (sic)" in violation of his due process rights.  (Count 3, Doc. 1, p. 24, ¶ 81.).

Plaintiff alleges that Defendant DHO Scandle failed to conduct an impartial disciplinary hearing on April 26, 2007, and that this Defendant did not rely upon evidence to find him guilty of the disciplinary charge in violation of his Fifth Amendment due process rights.  (Count 4, Doc. 1, pp. 24-25, ¶ 82.).

Any claims of Plaintiff challenging  the April 19, 2007 Incident Report, which Plaintiff alleges was a fabrication, the DHO's finding of guilt, and the resulting punishment Plaintiff received, including the loss of GCT, are  *Heck*-barred.  Recently, this Court in *Supples v. Burda*,

Civil No. 07-1560, M.D. Pa., 10-26-07 Memorandum (J. Caldwell), slip op. pp. 6-7, 2007 WL

3165537, stated:

> In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383
> (1994), the Supreme Court clarified the interplay between habeas and
> civil-rights claims.  The Court ruled that a section 1983 claim for
> damages does not accrue "for allegedly unconstitutional conviction
> or imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid," until the
> plaintiff proves that the "conviction or sentence has been reversed
> on direct appeal, expunged by executive order, declared invalid by
> a state tribunal authorized to make such determination, or called
> into question by a federal court's issuance of a writ of habeas
> corpus."  *Id.* at 486-87, 114 S.Ct. at 2372, 129 L.Ed.2d at 394
> (footnote omitted).
>
> *Heck* has been extended to requests for declaratory and
> injunctive relief.  *See Edwards v. Balisok*, 520 U.S. 641, 117
> S.Ct. 1584, 137 L.Ed.2d 906 (1997) (*Heck* bars a section 1983
> action seeking damages and declaratory relief which challenges
> a prison disciplinary hearing forfeiting good-time credits).  As
> the Court explained in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82,
> 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (emphasis in original):
> "a state prisoner's § 1983 action is barred (absent prior
> invalidation) - <u>no matter the relief sought </u>(damages or equitable
> relief), no matter the target of the prisoner's suit (state conduct
> leading to conviction or internal prison proceedings)  - *if* success
> in that action would necessarily demonstrate the invalidity of the
> confinement or its duration."  As the Third Circuit has summarized
> the holding of *Heck*: "where success in a § 1983 action would
> implicitly call into question the validity of conviction or duration
> of sentence, the plaintiff must first achieve favorable termination of
> his available state or federal habeas remedies to challenge the
> underlying conviction or sentence."  *Williams, supra*, 453 F.3d at 177
> (Emphasis added).

*See also Walker v. Zenk*, Civil No. 01-1644, M.D. Pa., 2-7-08 Memorandum slip op. pp. 25-28;

*Hudson v. Green*, Civil No. 07-542, M.D. Pa., 5-21-08 Memorandum of J. Conaboy, slip op. pp.

8-10.

Plaintiff's allegations in Counts 2, 3, and 4 necessarily challenge the validity of his segregation confinement as well as 87 days of lost GCT "that drastically effects (sic) Plaintiff ['s] release date" he suffered as a result of the April 26, 2007 DHO hearing. (Doc. 1, p. 9, ¶ 36.). As this Court in *Walker* stated:

> The rule established by the line of cases including *Heck* and *Edwards* is that a prisoner's civil rights action is barred - - regardless of the relief sought and regardless of the circumstances giving rise to the claim - - if success in that action would necessarily demonstrate the invalidity of confinement or the duration of confinement. *Wilkinson*, 544 U.S. at 81-82.

*Id.*, slip op. p. 27.  *See also Howard v. BOP*, 2008 WL 318387, * 18 (M.D. Pa.).

Our Plaintiff's success with respect to his due process claims (Counts 2, 3 & 4) necessarily invalidates the DHO's April 2007 finding of guilt and necessarily implies the invalidity of the sanctions he received, including the 87-day loss of GCT. Plaintiff is requesting relief that would alter the term of his confinement since his lost 87-days of GCT admittedly affected his release date from prison. Thus, Plaintiff's allegations necessarily imply the invalidity of the April 26, 2007 DHO hearing and the disciplinary sanctions imposed on him by Defendant Scandle. Thus, Plaintiff's due process claims regarding the second Code #201 incident report and his finding of guilt on this charge (Counts 2, 3 and 4) are *Heck*-barred. We will recommend that these stated Counts be dismissed without prejudice for Plaintiff to file a petition for writ of habeas corpus. As the Third Circuit recently noted in *Queen v. Miner*, C.A. No. 08-1049 (3d Cir. 2-29-08), slip op. p. 3, n. 2, 2007 WL 4248516 (M.D. Pa. 2007), "[a] challenge ... to a disciplinary action that resulted in the loss of good-time credits, is properly brought pursuant to a §2241 [habeas petition], as the action could affect the duration of the

Petitioner's sentence." (Citations omitted).

Plaintiff raises a claim against Defendant Stahl for "failing to provide assistance to Plaintiff in compiling documentary evidence, investigating documents, and assisting Plaintiff is presenting a defense." (Doc. 1, p. 24, ¶ 81).  Plaintiff claims that he "had requested for Staff Representation at DHO hearing [with respect to the second disciplinary charge he received for Code #201 offense] ... this Defendant Barry Stahl." (Doc. 1, p. 8, ¶ 32.).  Plaintiff claims that Defendant Stahl violated his due process rights by failing to adequately represent him during his DHO hearing and this resulted in his conviction on the second Code #201 incident report. This Court opined on the issue of inadequate counsel or staff representation in the case of *Von Kahl v. Brennan*, 855 F.Supp. 1413, 1426 (M.D. Pa.1994).  In *VonKahl*, this Court held:

> An inmate in a prison disciplinary proceeding has no constitutional right to counsel.  *Wolff*, 418 U.S. at 570, 94 S.Ct. At 2981-82.  However, in cases where am inmate is illiterate, where the issues in a particular case are extremely complex, or when other circumstances warrant it, due process may require that an inmate be permitted assistance of some sort to enable him to prepare his defense.  *Id.*  One of the circumstances which warrants such assistance is where an inmate's pre-hearing confinement interferes with his ability to prepare his defense.  *Silva v. Caset*, 992 F.2d 20, 22 (2d Cir.1993) (citing *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir.1988)).

Here, it is clear the Plaintiff is neither illiterate, nor is the case particularly complex as to require a staff representative.  As far as the Plaintiff's pre-hearing confinement creating interference in his preparation of a defense for the hearing, Plaintiff makes no claim or assertion in his Complaint that his confinement interfered with his defense.  Plaintiff merely states that Defendant Stahl "failed to investigate ... [the] 2nd code #201 Offense ... [and] stood by quietly and dismissed Plaintiff claims of foul-play as far fetched, as Plaintiff repeatedly requested for him

to investigate."  (Doc. 1, p. 8, ¶ 32).  Based on his Complaint, it appears that the gravamen of

Plaintiff's Count 3 due process claim is  Defendant Stahl's refusal to represent or investigate the

Plaintiff's proffered defense to the second Code #201 disciplinary charge.  *(Id.)*.

       As discussed above, to the extent that Plaintiff's Count 3 due process claim challenges

the validity of his disciplinary conviction on the second Code #201 incident report, this claim is

*Heck*-barred.[14]

       As mentioned, even if it was determined that Plaintiff was entitled to representation by

Defendant Stahl at his DHO hearing or that  DHO Scandle was biased as alleged (Count 4),

Plaintiff is challenging the end result of the disciplinary hearing regarding his conviction

on the second Code #201 offense.  Plaintiff seeks, as relief, to have the second disciplinary

conviction expunged, and to have his Good Time Loss restored.  (Doc. 1, p. 29, ¶'s 1.-2.).  Thus,

in essence, the Plaintiff seeks to invalidate the disciplinary hearing and the sanctions imposed,

including 87 days loss of Good Conduct Time.  (*Id*.).  In  *Medina v. Morton*, 2006 WL 758302,

* 5 (D.N.J. Mar.17 2006), the Court stated:

       In *Preiser v. Rodriguez*, 411 U.S. 475 (1973)., the Supreme Court held that
       a habeas petition is the proper mechanism for an inmate to challenge the

---

14.    Under the BOP regulations, "[t]he DHO shall arrange for the presence of the staff
representative selected by the inmate.  If the staff member selected declines ... the inmate has
the option of selecting another representative ... or of proceeding without a staff
representative."  28 C.F.R. 541.17(b).  The regulation further states,  "[w]hen several staff
members decline this role, the Warden shall promptly appoint a staff representative to assist the
inmate."  *Id*.
       Based on his Complaint, it seems the Plaintiff only requested Defendant Stahl and no
other staff to represent him.  Defendant Stahl refused, and it appears Plaintiff then elected to
continue with his disciplinary hearing with no representation after making only one request.

"fact or duration" of his confinement.  *Id.* at 498-99.  The Court extended this ruling to include a challenge to prison disciplinary proceedings that affect the length of confinement, such as the deprivation or loss of good conduct time.  *Muhammed v. Close*, 540 U.S. 749 (2004); *Edwards v. Balisok*, 520 U.S. 641 (1997).

Therefore, it appears Plaintiff's due process claims in Counts 2, 3 and 4 are improperly brought under *Bivens* and they should be brought in a § 2241 habeas petition.  For the above reasons, we shall recommend that all Fifth Amendment Due Process claims (Counts 2, 3 and 4) challenging his disciplinary hearing with respect to the second Code #201 conviction be dismissed without prejudice, as Plaintiff must file a habeas petition with respect to these claims.

   3.  *Count 10 Conspiracy Claim against Defendants Shelby and Bonnell*

Moreover, in Count 10, Plaintiff raises a conspiracy claim against Defendants Shelby and Bonnell, and he alleges that they conspired to fabricate the second disciplinary charge (Code #201 offense) against him for which he was found guilty and punished by losing 87 days of GCT.  (Count 10, Doc. 1, p. 26, ¶ 89.).[15]

We initially note, as stated above, that since Plaintiff alleges that Defendants  Shelby and Bonnell falsified or wrongly created an extra Incident Report against him on April 19, 2007, and fabricated the second Code 201 Offense against him, this does not state a constitutional claim because the filing of a false misconduct report does not constitute a violation of an inmate's constitutional rights.  In *O'Connell v. Sobina*, 2008 WL 144199, * 16 (W.D. Pa.), the Court

---

15.    Since Plaintiff was found guilty of the second Code # 201 incident report, he does not state a retaliation claim.  *See Romansky v. Stickman*, 147 Fed. Appx. 310, 312 (3d Cir. 2005) (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) ("stating that a finding that a prisoner violated the rules checkmates his retaliation claim").

stated that:

> A prisoner does not have a constitutional right to be free from
> being falsely or wrongly accused of conduct that may result in
> the deprivation of a protected liberty interest. *Freeman v. Rideout*,
> 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982,
> 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988).  In other words, the mere
> filing of false charges against an inmate does not constitute a *per se*
> constitutional violation.  *Id.*

*See also Wesley v. Dombrowski*, 2004 WL 1465650 *7 (E.D. Pa.).

Insofar as Plaintiff is claiming that his conviction of the charges in the April 19, 2007

Incident Report violated his Fifth Amendment due process rights, this Court, as well as the Third

Circuit,  have  consistently found that such a claim must be raised in a habeas corpus petition.

*See Leamer v. Fauver*, 288 F. 3d 532, 542 (3d Cir. 2002); *Queen, supra*.   For these reasons, we

will recommend that Plaintiff's Count 10 against Defendants Shelby and Bonnell be dismissed

without prejudice.

We also find that Plaintiff's vague conspiracy claim (Count 10) against Defendants Shelby

and Bonnell should be dismissed.  The Third Circuit in *Jones v. Maher*, Appeal No. 04-3993 (3d

Cir. 2005), slip op. p. 5, stated that broad and conclusory allegations in a conspiracy claim are

insufficient to state a viable claim.  (Citation omitted).  Also, the United States District Court for

the Middle District of Pennsylvania, in *Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa.

1992), *aff'd*. 980 F. 2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993), stated as follows:

> Bare conclusory allegations of "conspiracy" or "concerted action"
> will not suffice to allege a conspiracy.  The plaintiff must expressly
> allege an agreement or make averments of communication,
> consultation, cooperation, or command from which such an
> agreement can be inferred.  In *Waller v. Butkovich,* 584 F.Supp. 909,

931 (D.C.N.C. 1984), the district court outlined the pleading requirements in a conspiracy action.

> In most cases, a bare conclusory allegation of 'conspiracy' or 'concerted action' will not suffice.  The plaintiffs must expressly allege an agreement or make averments of 'communication, consultation, cooperation, or command' from which such an agreement can be inferred . . . (Citation omitted.) . . .  Allegations that the defendants' actions combined to injure the plaintiffs are not a sufficient basis from which to imply a conspiracy . . . (Citation omitted.)
> Additionally, the plaintiffs must make 'specific factual allegations connecting the defendant to the injury' . . . (Citations omitted.) . . .

The Plaintiff fails to state a conspiracy claim against  Defendants Shelby and Bonnell in that he does not allege an agreement between these Defendants to fabricate the 2nd Code #201 disciplinary charge against him.  We find that Plaintiff's bare conclusory allegations of conspiracy against Defendants Shelby and Bonnell are inadequate to allege a conspiracy claim.  *See Flanagan, supra.*

Therefore, we will recommend that Plaintiff's conspiracy claim (Count 10, Doc. 1, p. 26, ¶ 89.) be dismissed as against Defendants Shelby and Bonnell.

4. *Counts 6, 8 and 9 Claims against Supervisory Defendants Sniezek, Dodrill and Lappin*

Plaintiff's claims against Supervisory Defendants Sniezek, Dodrill and Lappin (Counts 6, 8 and 9, Doc. 1, pp. 25-26) involve their responses to Plaintiff's grievance appeals.  As discussed above, since Plaintiff had no Constitutional right to a grievance process in the first place, his claims that the three supervisory Defendants failed to investigate his grievances, and improperly denied his grievance appeals, fail to state cognizable claims.

-27-

It is well established that personal liability in a civil rights action cannot be imposed upon a prison official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976).  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

This Court in *Padilla v. Beard*, 2006 WL 1410079, * 6  (M.D. Pa.) stated:

> [A]n allegation that an official ignored an inmate's request for an investigation or that the official did not properly investigate is insufficient to hold that official liable for the alleged violations.  *Greenwaldt v. Coughlin*, 1995 WL 232736 (S.D.N.Y.Apr.19, 1995) (citations omitted); *Rivera v. Goord*, 119 F.Supp.2d 327 (S.D.N.Y.2000).  As stated it is well established that personal liability ... cannot be imposed upon a[n] ... official based on a theory of respondeat superior.  (Citation omitted).  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a [civil rights] case and that a complaint must allege such personal involvement. (Citation Omitted).  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrence upon which Plaintiff's claims are based.  (Citation Omitted).

Plaintiff Hart's claims against supervisory Defendants Sniezek, Dodrill and Lappin stem from their responses to his appeals filed in the BOP grievance process and from the letters he sent to these supervisory Defendants requesting an investigation.  Plaintiff's claim against Defendant Sniezek is that he denied Plaintiff's appeal request (¶ 45) and Plaintiff's claim against Defendant Dodrill is that he failed "to unbiasly investigate." (¶ 57).  Plaintiff also alleges that Defendant Lappin did "not correct[] Plaintiff's administrative appeal." (Doc. 1, p. 26, ¶ 88).

Plaintiff's claim that the three supervisory Defendants failed to properly respond to his appeals of his grievances does not state a Constitutional claim, since an inmate has no Constitutional right to a grievance process.  The law is well-settled that there is no constitutional right to a grievance procedure.  *See Jones v. North Carolina Prisoners' Labor Union, Inc.*  433 U.S. 119, 137-138 (1977).  This very Court has also recognized that grievance procedures are not constitutionally mandated.  *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential).  Even if the prison provides for a grievance procedure, as the BOP does, violations of those procedures do not amount to a civil rights cause of action.  *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995).  *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa. (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted).  Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated.  *Burnside, supra., aff'd.* 138

Fed.Appx. 414, 2005 WL 1532429 (3d Cir. 2005).

Based on the above, Plaintiff had no right to a grievance process and the decisions of the supervisory Defendants Sniezek and Lappin with respect to Plaintiff's BOP Administrative remedy appeals does not state a Constitutional claim against these Defendants. Further, as set forth in *Padilla*, Defendant Dodrill's failure to investigate Plaintiff's grievances is insufficient to hold this supervisory defendant liable and he should likewise be dismissed.

Plaintiff's claims are also lacking with respect to the alleged personal involvement of these three supervisory defendants and they are not sufficient to state a Constitutional claim under §1331 against them as set forth in *Padilla*. In *Padilla*, this Court stated that "[e]ach named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrence upon which Plaintiff's claims are based." *Padilla*, 2006 WL 1410079 at *6. The grievances and appeals upon which Plaintiff's claims in Counts 6, 8 and 9 are based is the alleged fabrication of the second Code #201 offense and the disciplinary hearing thereafter. (Doc. 1, pp. 25-6, ¶'s 84, 86, 88). Based on the Plaintiff's Complaint, he fails to state that any of the above named supervisory Defendants were personally involved in the alleged fabrication of the second Code #201 incident report or the grievance procedure that followed, nor are they alleged to have been aware of such an allegation at the time it occurred. Further, the mere notification of these allegations to a supervisory defendant through the filing of a grievance, report or appeal to him or her without remedy or action is not enough to show necessary personal involvement. *Spencer v. Kelchner*, 2007 WL 88084 *7 (M.D.Pa.) (*citing Rizzo*, 423 U.S. 362).

For the above reasons, we will recommend that the Fifth Amendment Due Process claims against supervisory Defendants Sniezek, Dodrill and Lappin (Counts 6, 8 and 9) be dismissed.  Since we will recommend that Plaintiff's claims against Supervisory Defendants Sniezek, Dodrill and Lappin (Counts 6, 8 and 9, Doc. 1, pp. 25-26, ¶'s 84, 86 and 88) be dismissed, we will also recommend that these three Defendants be dismissed entirely from this case.

*5. Counts 5 and 7, Equal Protection Claims against Defendants Stahl and Whalen*

Plaintiff brings claims against two Defendants, Stahl and Whalen, for violating his Equal Protection rights under the Fifth Amendment.  (Doc. 1, p. 25, ¶'s 83. and 85.).   In Count 5, Plaintiff alleges that Defendant Stahl conspired with Defendant Whalen in falsifying his CCS form and that this "constituted vengeance in violation of the Equal Protection Clause of the Fifth Amendment." (Count 5, Doc. 1, p. 25, ¶ 83.).  In Count 7, Plaintiff alleges that Defendant Whalen's actions "in racially Harassing Plaintiff (a[n] African/american inmate), by Posting a poster of Plaintiff's Father (Whom is Mumia Abu-Jamal - a Political Prisoner who resides in a Pennsylvania State Prison on "Death-Row") Picture on his office wall for purpose of ridicule and intimidation based on Plaintiff's Father and his ace (sic) Political views constituted Racial Discrimination in violation of the Equal Protection Clause of the Fifth Amendment to the United States Constitution." (Count 7, Doc. 1, p. 25,

¶ 85.).

The Equal Protection clause of the Fourteenth Amendment requires all persons "similarly situated" to be treated alike by state actors.  *See City of Cleburne, Tex. V. Cleburne Living Center,*

473 U.S. 432, 439 (1985).  While the Fifth Amendment does not contain an equal protection clause applicable to federal actors, the Fifth Amendment's Due Process Clause has been interpreted to contain an equal protection element, which proscribes racial discrimination to the same extent as the Fourteenth Amendment's Equal Protection Clause.  *See Washington v. Davis*, 426 U.S. 229, 239 (1976).  Hence, we  will utilize the Fourteenth Amendment's framework in analyzing the Fifth Amendment equal protection claims made by the Plaintiff (Counts 5 and 7).

To state an equal protection claim a plaintiff must allege that (1) he was a member of a protected class, (2) he was treated differently from similarly situated persons outside of his protected class, and (3) the discrimination was purposeful or intentional rather than incidental. *Id.*, *See also Banks v. One or More Unknown Named Confidential Informants of Federal Prison Camp Canaan*, 2008 WL 2563355 *9 (M.D. Pa.); *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 423-24 (3d Cir.2000).

We construe Plaintiff as raising a class of one equal protection claim.  In *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), the Supreme Court recognized a class of one equal protection claim when Plaintiff alleges that he has been irrationally singled out.   *See Engquist v. Oregon Dept. Of Agriculture*, 553 U.S.___, slip op. pp. 8-9, 128 S.Ct. 2146 (June 9, 2008).  In *Olech*, the Plaintiff did not allege that she was discriminated against based on her membership in an identifiable group.  Rather, the Court found that Plaintiff Olech stated a cognizable equal protection claim since she alleged that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564(citations omitted).

In *Engquist*, the Court stated:

> When those who appear similarly situated are nevertheless
> treated differently, the Equal Protection Clause requires at least
> a rational reason for the difference, to assure that all persons
> subject to legislation or regulation are indeed being "treated alike
> under like circumstances and conditions."  Thus, when it appears that
> an individual is being singled out by the government, the specter of
> arbitrary classification is fairly raised, and the Equal Protection Clause
> requires a "rational basis for the difference in treatment." *Olech*,
> 528 U.S. at 564.

553 U.S.___, slip op. pp. 9-10, 128 S.Ct. 2146.

In Count 5, Plaintiff Hart does not allege that he is a member of a suspect class; rather, he states that he was treated differently than others similarly situated.[16]  Under this "class of one" theory, "a plaintiff states a claim for violation of the Equal Protection clause when he alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  *Mosca v. Cole*, 217 Fed. App'x. 158, 164 (3d Cir. 2007) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564); *Engquist, supra*.

Plaintiff Hart has failed to allege facts from which it can be concluded that Defendant Stahl treated him differently than similarly situated inmates when the prison staff determined their CCS or that Defendant Stahl engaged in intentional or purposeful discrimination.  *See, e.g., Mosca*, 217 Fed. App'x. at 164 (regarding the plaintiff's equal protection claim, at the very least, the plaintiff must allege that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the

---

16.    Since we do not find that Plaintiff has raised a protected-class claim under the Fifth Amendment Equal Protection Clause, and since there is no evidence attached to the Complaint to support such a theory, we only discuss Plaintiff's class-of-one claim.

difference in treatment") (citing *Hill v. Borough of Kutztown*, 455 F.3d 255, 239 (3d Cir. 2006)). *See also D'Altilio v. Dover Tp., 2007 WL 2845073,*\* 10 (M.D. Pa.).  Plaintiff points to no other inmates at FCI-Schuylkill who were similarly situated to him that were treated differently by Defendant Stahl.  In *D'Altilio*, the Court stated that "a class-of-one plaintiff must allege the existence of similarly situated individuals whom the defendant treated differently than the plaintiff."  2007 WL 2845073,  \* 10 (citation omitted).   Our Plaintiff has failed to show the existence of inmates at FCI-Schuylkill who Defendant Stahl treated differently with respect to determining their CCS.  Thus, as in *D'Altilio*, our Plaintiff has not stated "the existence of similarly situated individuals sufficient to support a class-of-one claim."  *Id*.  Since our Plaintiff has failed to state the existence of any such inmates and how these inmates were treated differently by Defendant Stahl when their CCS were determined, Count 5 as against Defendant Stahl, with respect to Plaintiff's class-of-one equal protection claim, should be dismissed.

In Count 5 of his Complaint, Plaintiff also alleges that Defendant Stahl conspired with Defendant Whalen in falsifying his Custody Classification Score and that this "constituted vengeance in violation of the Equal Protection Clause of the Fifth Amendment."  (Doc. 1, p. 25, ¶ 83.).  As discussed above, we have found that Plaintiff provided evidence with his Complaint that there was no falsifying of his custody score.  (Doc. 1, Att. 5).  Even if we did not make this finding, Plaintiff still fails to  state a valid claim against Defendant Stahl for violation of his equal protection rights.  There are no allegations in Plaintiff's pleading and no records he submitted that show any personal involvement of Defendant Stahl with the calculation of or any input in regard to the Plaintiff's Custody Classification Score.  Plaintiff only alleges that on June 6, 2007,

Defendant Stahl replied to his informal complaint against Defendant Whalen regarding his Custody Classification Form (BP-338) and his security points, and found no wrongdoing.   (Doc. 1, p. 11, ¶ 41.).   The response from Defendant Stahl to Plaintiff's BOP Informal Resolution Form referenced by the Plaintiff came on June 6, 2007, and stated, "Inmate Hart's latest custody/classification form is dated February 2, 2007 and reflects a security total of 16 points, and is approved by Ms. Edwards, Unit Manager."  (Doc. 1, Att. 2).  As discussed above, Plaintiff had no Constitutional right to any particular custody status.  *See Smith, supra*.  Further, Plaintiff's vague allegations of a conspiracy between Defendants Stahl and Whalen fail to state a Constitutional claim.  *See Flanagan v. Shively, supra*.[17]

As stated, Plaintiff's Fifth Amendment Equal Protection claim against Defendant Whalen is as follows:

> The action of Defendant Whalen in racially Harassing Plaintiff (a African/American inmate), by Posting a poster of Plaintiff's Father (Whom is Mumia Abu-Jamal - a Political Prisoner who resides in a Pennsylvania State Prison on "Death-Row") Picture on his office wall for purpose of ridicule and intimidation based on Plaintiff's Father and his ace Political Views constituted racial discrimination.

(Doc. 1, p. 25, ¶ 85., Count 7).

According to the Complaint, Defendant Whalen allegedly wrote on the poster of Plaintiff's father "He has fooled the world he is innocent.  But he is guilty of murdering Police Officer Daniel Faulkner!"  (Doc. 1, p. 14, ¶ 49).  Plaintiff also contends he noticed this picture of

---

17.    Nor does Plaintiff state a First Amendment retaliation claim against Defendant Stahl, since such a claim requires personal involvement by the defendant in the alleged retaliatory conduct, providing a causal connection.  *See Brennan v. Norton*, 350 F.3d 399, 414, 419 (3d Cir.2 005).

his father while in a confrontation with Defendant Whalen which allegedly included threats and racial slurs directed at Plaintiff.  (*Id.*, ¶'s 48-49).

We have previously found that Plaintiff's allegations of verbal harassment by Defendant Whalen do not rise to the level of a constitutional violation.  Mere words spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights by the officer.  *Johnson v. Glick*, 481 F.2d 1028, 1033 n. 7 (2d Cir.1973); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979) (verbal harassment by threatening to hang an inmate is not sufficient to state a constitutional deprivation under §1983).  "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."  *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir.2000).  A constitutional claim based only on verbal threats will fail if it is asserted under the Fifth Amendment's substantive due process clause.  *See Pittsley fv. Warish*, 927 F.2d 3, 7 (1st Cir.), *cert denied*, 502 U.S. 879 (1991).  Based on this, we will recommend the Plaintiff's Fifth Amendment Equal Protection claim against Defendant Whalen be dismissed, insofar as he alleges Whalen racially harassed him and yelled abusive threats at him.

Further, verbal harassment or threats, with some reinforcing act accompanying them may state a constitutional claim, as, for example, a case where some action was taken by the Defendant that escalated the threat beyond mere words.  *See Northington v. Jackson*, 973 F.2d 1518 (10th Cir.1992) (a correctional officer placed a revolver to an inmate's head a threatened to shoot); *Douglas v. Marino*, 684 F.Supp. 395 (D.N.J.1988) (involving prison employee who

threatened an inmate with a knife.).

In our case, the question arises as to whether the alleged poster of Plaintiff's father hung on Defendant Whalen's office wall is a reinforcing act accompanying the alleged racially insensitive speech of Defendant Whalen. The mere hanging of a poster, no matter who is depicted, cannot be determined as a physical act accompanying Defendant Whalen's alleged threatening speech like those in *Northington* and *Douglas*.  Furthermore,  Plaintiff admits he came across, on his own, the poster of his father that Defendant Whalen allegedly posted on the wall in his office, and nowhere does Plaintiff seem to claim that Defendant Whalen specifically or intentionally pointed this poster out to Plaintiff in a way meant to intimidate and/or discriminate against the Plaintiff.  There was nothing racially insensitive written on the poster.  Plaintiff states that the poster had the following message written across it, "He has Fooled the World He is Innocent.  But He is Guilty of Murdering Police Officer Daniel Faulkner!."  (Doc. 1, ¶ 49.). Further, when Defendant Whalen acknowledged that Plaintiff looked at the poster, Plaintiff avers that Whalen told him "there is nothing you can do about it as I show every staff what a murderer your father really is and your Black -#ss  want to be just like him!!."

In *D'Altilio*, the Court stated that "under the class-of-one theory, a Plaintiff may have an equal protection claim even absent protected-class status if he or she alleges irrational and intentional differential treatment when compared with similarly situated individuals."  2007 WL 2845073,  * 8 (citation omitted).

Based on Plaintiff's allegations (Doc. 1, ¶'s 48- 49.), in taking  them as true, as we must, we find that Plaintiff has sufficiently stated that Defendant Whalen has treated him differently than similarly situated inmates without a rational purpose for doing so based on who Plaintiff's father is.  Thus, we find that Plaintiff has stated a Fifth Amendment equal protection claim against Defendant Whalen in Count 7.  Therefore, we will recommend this claim (Count 7) be allowed to proceed against Defendant Whalen.

## VII.  Recommendation.

Based on the foregoing, it is respectfully recommended that the Plaintiff's claim of First Amendment retaliation claim against Defendant Whalen (Count 1, Doc. 1, p. 24, ¶ 79.) be dismissed.  It is recommended that Plaintiff's Fifth Amendment due process claims regarding the second Code #201 incident report and his finding of guilt on this charge  (Counts 2, 3 and 4) be found to be  *Heck*-barred, and that these stated Counts be dismissed without prejudice for Plaintiff to file a § 2241 petition for writ of habeas corpus.  Thus, it is recommended that Plaintiff's Fifth Amendment Due Process claims against Defendants Stahl, Scandle, Shelby and Bonnell be dismissed without prejudice to allow the Plaintiff to file a habeas petition with respect to his challenge of the second Code #201 incident report and his conviction on this charge.

It  is further recommended that Plaintiff's conspiracy claim (Count 10, Doc. 1, p. 26, ¶ 89.) be dismissed as against Defendants Shelby and Bonnell.  Additionally, it is recommended that Count 5 as against Defendant Stahl, with respect to Plaintiff's class-of-one Fifth Amendment equal protection claim, be dismissed.  It is recommended that that Plaintiff's Fifth Amendment

equal protection claim against Defendant Whalen in Count 7 be allowed to proceed.

Additionally, it is recommended that the Plaintiff's Fifth Amendment Due Process claims against

supervisory Defendants Sniezek, Dodrill and Lappin  (Counts 6, 8 and 9) be dismissed.

Finally, it is recommended that this matter be remanded to the undersigned for further

proceedings only with respect to Plaintiff's Fifth Amendment equal protection claim against

Defendant Whalen in Count 7.

 

 

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

 

**Dated: July 29, 2008**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMAL HART, | : | CIVIL ACTION NO. **3:CV-08-0828** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WALTER WHALEN, et al., | : | |
| | : | |
| Defendants | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **July 29, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                 **s/ Thomas M. Blewitt**
                               **THOMAS M. BLEWITT**
                               **United States Magistrate Judge**

**Dated: July 29, 2008**