UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JAMAL HART,

    Plaintiff,

v.

WALTER WHALEN, et al.,

    Defendants.

Case No. 3:08-CV-00828

(Judge Kosik)

FILED
SCRANTON
DEC 2 2 2009

## MEMORANDUM

Presently before us is the Report and Recommendation (the "R&R") of Magistrate Judge Thomas M. Blewitt, filed July 29, 2009 (Doc. 16), as well as Plaintiff's Objections to the R&R (Docs. 23, 29). For the reasons that follow, we will adopt the Magistrate Judge's R&R. We have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because the claims in the Complaint raise federal questions.

## PROCEDURAL HISTORY

Plaintiff Jamal Hart ("Plaintiff") filed this action pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), on May 5, 2008, alleging various civil rights violations arising from his incarceration at the Federal Correctional Institution in Schuylkill, Pennsylvania ("FCI-Schuylkill"). (Doc. 1 at 2.) Plaintiff named as defendants: Lieutenant T. Bonnell; D. Scott Dodrill, Regional Director of the Northeast Regional Office of the Bureau of Prisons; Harley G. Lappin, Director of the Bureau of Prisons; Disciplinary Hearing Officer R. Scandle; Lieutenant Shelby; Warden T. R. Sniezek; Barry Stahl, Counselor; and Case Manager Walter Whalen. (Doc. 16 at 4.) By order on June 8, 2008, the Magistrate Judge denied Plaintiff's requests to proceed in forma pauperis based on the balance in

1

Plaintiff's inmate account. (Docs. 10; see also Docs. 2, 6, 7 & 9.) Plaintiff subsequently paid the full filing fee (see Doc. 12 & 15), and the Magistrate Judge screened Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A(b).

On July 29, 2008, the Magistrate Judge issued the R&R, recommending that we dismiss most of Plaintiff's claims. (Doc. 16 at 38–39.) Plaintiff filed a Motion for Extension of Time to file his objections to the R&R (Doc. 19), which we granted on August 28, 2008 (Doc. 19).

On September 4, 2008, Plaintiff filed Objections to the Magistrate Judge's R&R. (Doc. 23.) Plaintiff filed a Motion to Amend/Correct Objections on September 19, 2008 (Doc. 24), which we granted on May 13, 2009 (Doc. 28). While waiting for our May 2009 ruling, Plaintiff filed three other documents with the court: a "Motion to Commence Complaint and for Order to Serve Summons Upon Defendants" on November 10, 2008 (Doc. 25); a "Motion for Service of Summons Upon Defendants" on December 22, 2008 (Doc. 26); and a request for a copy of the docket sheet on March 20, 2009 (Doc. 27).

As noted above, on May 13, 2009, we issued a Memorandum and Order (Doc. 28) granting Plaintiff leave to amend his Objections and dismissing as premature Plaintiff's other filings (Docs. 25 & 26). Pursuant to this Memorandum and Order, Plaintiff filed his Amended Objections to the R&R on June 5, 2009. (Doc. 29.) Between June and October 2009, Plaintiff filed three additional documents with the court again requesting service of process in his case (Docs. 30, 31) and entry of default judgment (Doc. 32).

The Magistrate Judge's R&R and Plaintiff's Amended Objections are presently before us and ripe for adjudication. For the reasons that follow, we will adopt the Magistrate Judge's R&R.

## FACTUAL BACKGROUND

Plaintiff is currently an inmate at the Federal Correctional Institution in Loretto, Pennsylvania ("FCI-Loretto"); his claims involve events that occurred while Plaintiff was incarcerated in FCI-Schuylkill. (Doc. 1 at 7, ¶ 2.) In his Complaint, Plaintiff alleges a number of claims under Bivens, including:

> Retaliation by prison staff/officials in violation of the First Amendment to the Constitution, racial discrimination by prison officials in violation of the Equal Protection Clause of the Fifth Amendment . . . , failure of prison official[s] to correct other officials' Constitutional violations in violation of the Equal Protection Clause . . . , failure of prison officials to follow Bureau of Prison's Rules and Regulations in violation of the Due Process Clause of the Fifth Amendment . . . . The Plaintiff also alleges that prison officials has [sic] conspired in depriving him of Equal Protection and Due Process of the Law, and the right to petition the Government for a redress of grievances.

(Id. at 6–7.)

The gravamen of Plaintiff's Complaint is that his custody classification score ("CCS") at FCI-Schuylkill was falsely inflated, which Plaintiff alleges interfered with his request to transfer to a low security facility. (Id. at 8–10.) Plaintiff alleges that a series of disputes occurred regarding his CCS; the majority of these conflicts were between Plaintiff and Defendant Whalen. (Id. at 8, ¶ 12.) Further background information may be found in the R&R. (See Doc 16 at 1–4.)

As a result of his treatment at FCI-Schuylkill, Plaintiff requests relief against eight defendants and raises ten claims for relief. (Doc. 1 at 29–31, ¶¶ 79–89.) Plaintiff alleges that:

1. Defendant Whalen falsified his CCS in violation of the First Amendment to retaliate against Plaintiff for speaking to Defendant Whalen's supervising officer;
2. Defendant Shelby submitted a false report about an incident between Plaintiff and another inmate on April 19, 2007, in violation of Plaintiff's due process rights under the Fifth Amendment;
3. Defendant Stahl failed to provide adequate assistance to Plaintiff at his April 26, 2007 disciplinary hearing in violation of the Due Process Clause of the Fifth Amendment;
4. Defendant Scandle violated Plaintiff's due process rights under the Fifth Amendment by not conducting the disciplinary hearing in a fair and unbiased manner;

5. Defendant Stahl and Defendant Whalen conspired to falsify Plaintiff's CCS in violation of the Equal Protection Clause of the Fifth Amendment;
6. Defendant Sniezek failed to conduct an investigation into Plaintiff's complaints against Defendants Whalen and Stahl in violation of the Due Process Clause of the Fifth Amendment;
7. Defendant Whalen harassed Plaintiff by displaying a poster of Plaintiff's father "for purposes of ridicule and intimidation" based on Plaintiff's race and political beliefs in violation of the Equal Protection Clause of the Fifth Amendment;
8. Defendant Dodrill failed to address or stop Defendants Shelby and Whalen's constitutional rights violations against Plaintiff;
9. Defendant Lappin failed to correct Plaintiff's CCS, which deprived Plaintiff of good time credit that could have lessened his sentence and constituted a due process violation under the Fifth Amendment; and
10. Defendants Shelby and Bonnell conspired to fabricate a second incident report on April 19, 2007, in order to retaliate against Plaintiff in violation of the Due Process Clause of the Fifth Amendment.

(Doc. 1 at 29-31, ¶¶ 79–89.)

Plaintiff requests a declaratory judgment from the court that Defendants violated his constitutional rights, as well as an injunction against Defendants to forestall further violations.[1] (Doc. 1 at 31-33.) Plaintiff also requests that we order the warden at FCI-Loretto, where Plaintiff is currently incarcerated, to expunge the disciplinary convictions on Plaintiff's record and restore his good time credits to him. (Doc. 1 at 33–34.) Finally, Plaintiff requests that we award him compensatory and punitive damages against all Defendants.[2] (Doc. 1 at 34.)

---

[1] In his Amended Objections, Plaintiff concedes that injunctive relief is no longer appropriate in light of his transfer to FCI-Loretto. (Doc. 29 at 6.) Although there are situations in which a plaintiff who is no longer subjected to the alleged conditions he attempts to challenge may still request injunctive relief, see Brown v. Fauver, 819 F.3d 395, 400 (3d Cir. 1987) (holding that "past exposure to illegal conduct does not itself show [standing for injunctive relief]," and that "the plaintiff must establish a real and immediate threat that he would again be the victim of the alleged unconstitutional practice") (citations omitted), we do not believe the instant case qualifies. Given the remote chance of Plaintiff again being subjected to the conditions he challenges, we find his request for injunctive relief to be moot. See Weaver v. Wilcox, 650 F.2d 22, 27 & n.13 (3d Cir. 1981) (holding that a "prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge").

[2] As the Magistrate Judge correctly notes, insofar as Plaintiff requests monetary damages against Defendants in their official capacities, he is barred from doing so. (See Doc. 16 at 4, n.4.)

4

## STANDARD OF REVIEW

### I. Screening under the Prison Litigation Reform Act

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996) (the "PLRA"), "obligates the Court to engage in a screening process," even where, as here, Plaintiff has paid the full filing fee in his civil rights action. (Doc. 16 at 3.) The Federal Magistrates Act, codified in pertinent part at 28 U.S.C. § 636, provides that a district judge may delegate the duty of screening such complaints to a magistrate judge. 28 U.S.C. § 636(b)(1)(A). Where a party objects to the magistrate judge's findings and recommendations, a district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Although the court's review is de novo, the court is permitted by statute to rely upon the magistrate judge's proposed recommendations to the extent the court, in the exercise of sound discretion, deems proper. See United States v. Raddatz, 447 U.S. 667, 676 (1980); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

In addition to screening any civil complaint in which a prisoner seeks redress from a governmental entity, officer, or employee, the PLRA also mandates that the court shall dismiss all or part of the complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(a) & (b). "A complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). When determining whether to dismiss a complaint at the screening stage, the court should employ the same standard

as it would under Federal Rule of Civil Procedure 12(b)(6). Grayson v. Mayview State Hosp., 293 F.3d 103, 110 (3d Cir. 2002) (stating that the provisions of the PLRA "employ . . . language borrowed from Rule 12(b)(6), to require that district courts shall dismiss complaints that fail to state a claim").

**II.     Motion to Dismiss Standard**

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief; the complaint must provide the defendant with fair notice of the claim. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When considering a Rule 12(b)(6) motion to dismiss, the court must view the complaint in the light most favorable to the plaintiff and must accept all well-pleaded allegations as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). The issue in a motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (the Rule 8 pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original, internal citations omitted). The court need not accept unsupported inferences, Cal. Pub.

Employees Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), nor legal conclusions cast as factual allegations, Twombly, 550 U.S. at 556. Legal conclusions without factual support are not entitled to the assumption of truth. See Ashcroft v. Iqbal, --- U.S. ---, ---, 129 S. Ct. 1937, 1949–50 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

Once the court winnows conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense review of the claim to determine whether it is plausible. This is a context-specific task, for which the court should be guided by its judicial experience. The court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. The complaint that shows that the pleader is entitled to relief—or put another way, facially plausible—will survive a Rule 12(b)(6) motion. See Fed. R. Civ. P. 8(a)(2).

The Court of Appeals for the Third Circuit has instructed us to read pro se complaints liberally, especially those of pro se prisoners, who "are often at an informational disadvantage that may prevent them from pleading the full factual predicate for their claims." Spruill, 372 F.3d at 236 n.12 (citing Alston v. Parker, 363 F.3d 229, 233–34 & n.6 (3d Cir. 2004)).

## DISCUSSION

I. **Bivens Claims**

Plaintiff filed his Complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Under limited circumstances, Bivens permits

courts to hold federal officials liable for constitutional rights violations when such persons act officially. Id. at 392 (holding that the Fourth Amendment "operates as a limitation upon the exercise of federal power regardless of whether the State in whose jurisdiction that power is exercised would prohibit or penalize the identical act if engaged in by a private citizen"); see also Carlson v. Green, 446 U.S. 14, 18 (1980) (holding that Bivens "established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right"); Jaffee v. United States, 663 F.2d 1226, 1230 (3d Cir. 1981) (adopting the Carlson Court's interpretation of Bivens). In order for a plaintiff to properly allege such a claim, he must show (1) that the alleged misconduct was committed by a federal agent, and (2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. See Bivens, 403 U.S. at 395.

A Bivens action is the federal counterpart to claims under 42 U.S.C. § 1983 and the standards for determining injuries developed in § 1983 litigation apply. See Paton v. La Prade, 524 F.2d 862, 871 (3d Cir. 1975); see also Veteto v. Miller, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992) (noting that "most courts . . . have borrowed principles from litigation arising under 42 U.S.C. § 1983" to address Bivens claims). Neither § 1983 nor a Bivens claim create substantive rights; they "merely provide[] a mechanism for enforcing individual rights 'secured' elsewhere . . . 'One cannot go into court and claim a violation of § 1983—for § 1983 by itself does not protect anyone against anything.'" Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002) (quoting Chapman v. Houston Welfare Rights Org., 451 U.S. 287, 294 (1981)).

"A defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior."

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). The plaintiff must allege personal involvement, which "can be shown through allegations of personal direction or of actual knowledge and acquiescence," and must be pled with particularity. Id.; see also Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980) (holding civil rights complaint adequate where it states time, place, conduct, and persons responsible); Hall v. Pa. State Police, 570 F.2d 86, 89 (3d Cir. 1978) (holding that a plaintiff's mere assertions that his rights have been violated "without facts upon which to assess the substantiality of the claim" insufficient to support action). Courts should hesitate to imply a private right of action, however, for constitutional violations in the face of an explicit congressional declaration of an alternate remedy or when, in the absence of affirmative action by Congress, special factors counsel hesitation. See Jaffee, 663 F.2d at 1230.

## II.  Recommendations and Objections

We note as a preliminary matter that Plaintiff's Complaint (Doc. 1) and Amended Objections (Doc. 29) are both lengthy and at times opaque documents. Plaintiff's Complaint and attached exhibits span sixty pages;[3] the Amended Objections account for another fifty-five pages, in large part reiterating allegations from the Complaint. Plaintiff frequently challenges the Magistrate Judge's recommendations as "in error of interpretation of law," before citing generalized case law propositions. (See e.g., Doc. 29 at 8, 12, 15.)

The Magistrate Judge recommends that we dismiss all but the Plaintiff's seventh claim, which implicates the Equal Protection Clause of the Fifth Amendment. Insofar as we can

---

[3] As the Magistrate Judge notes, "in screening a prisoner's complaint under the PLRA, the Court can consider exhibits attached to the complaint." (Doc. 16 at 3, n.3.) See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994) (holding that in determining Rule 12(b)(6) motions, courts "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case," in addition to the pleadings).

9

identify cognizable objections to the R&R, we will address them pursuant to Local Rule 72.3.[4] We will address Plaintiff's claims seriatim.

### A. Count One: First Amendment Retaliation Claim

The Magistrate Judge recommends that we dismiss Plaintiff's First Amendment retaliation claim against Defendant Whalen (Count 1), because Plaintiff fails to state a cognizable claim. In his Amended Objections, Plaintiff fails to specifically object to the R&R. In reviewing Plaintiff's allegations, we agree with the R&R and will therefore dismiss Plaintiff's First Amendment retaliation claim against Defendant Whalen.

In order to establish a constitutional retaliation claim, the plaintiff must prove: "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." Eichenlaub v. Twp. of Ind., 385 F.3d 274, 282 (3d Cir. 2004) (citing Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)). "The threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation." Id.

In the instant case, Plaintiff essentially alleges that Defendant Whalen retaliated against Plaintiff when Plaintiff spoke to Helder, Defendant Whalen's supervisor in an attempt to correct his CCS. While "[i]t is well-settled that an inmate has no recognizable constitutional right to a particular custody status," nor to being placed in any particular prison, Smith v. United States, 2007 WL 4270602, *11 (M.D. Pa. 2007) (citing Olim v. Wakinekona, 461 U.S. 238 (1983)); see also Hart v. Whalen, 2008 WL 4107651, *6 (dealing with a similar claim by the instant

---

[4] Local Rule 72.3 requires the party objecting to the Magistrate Judge's R&R to follow Local Rule 72.2 briefing requirements. M.D. Pa. Loc. R. 72.3. These requirements provide that the objecting party must file a written statement "specifically designating the order, or part thereof, appealed from and the basis for any objection thereto." M.D. Pa. Loc. R. 72.2.

plaintiff), Plaintiff's complaints to Helder may be constitutionally protected conduct, see, e.g. Milhouse v. Carlson, 652 F.2d 371, 373–74 (3d Cir. 1981) ("A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim."). Even viewing the allegations in the light most favorable to Plaintiff, we find that the increase in Plaintiff's CCS was based on FCI-Schuylkill's custody classification guidelines rather that retaliatory motives.[5]

Additionally, insofar as Plaintiff alleges that Defendant Whalen violated his Eighth Amendment rights against cruel and unusual punishment by verbally threatening Plaintiff, he fails to state a claim.[6] We will therefore adopt the Magistrate Judge's recommendation and dismiss Count One of Plaintiff's Complaint.

**B.    Counts Two, Three, and Four: Fifth Amendment Due Process Claims**

Plaintiff asserts Fifth Amendment Due Process claims against Defendants Bonnell, Scandle, Shelby, and Stahl for their part in his April 2007 custody classification hearing. The Magistrate Judge recommends that we dismiss these allegations (Counts Two, Three, and Four) without prejudice under Heck v. Humphrey, 512 U.S. 477 (1994), so that Plaintiff may file a 28 U.S.C. § 2241 habeas corpus petition with respect to these claims. We agree with the Magistrate Judge's assessment and will therefore dismiss Counts Two, Three, and Four of Plaintiff's Complaint under Heck.

---

[5] Plaintiff's own exhibits establish the standards used to determine his CCS. (See Doc. 1, Att. 5 (noting that while FCI-Schuylkill staff decreased Plaintiff's CCS because of corrections to his criminal history report, they also increased the score to reflect Plaintiff's participation in required programs, which resulted in a net increase in Plaintiff's score).)

[6] It is well established that verbal harassment does not rise to the level of a constitutional rights violation. See, e.g., Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa. 1986), aff'd, 800 F.2d 1130 (3d Cir. 1986) ("Verbal abuse is not a civil rights violation.").

11

The import of Heck is that "where the success in a[n action challenging the fact or duration of a prisoner's confinement] would implicitly call into question the validity of conviction or duration of sentence, the plaintiff must first achieve favorable termination of his available state or federal habeas remedies to challenge the underlying conviction." Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006). Heck therefore bars such actions "no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit ([whether] conduct leading to conviction or internal prison proceedings)–if success in that action would necessarily demonstrate the invalidity of the confinement or its duration." Id. (citing Wilkinson v. Dotson, 544 U.S. 74, 81082 (2005)) (emphasis in original).

As we previously noted, Plaintiff alleges that Defendant Shelby issued a false report against him because Plaintiff exercised his constitutional rights (Count Two). (Doc. 1 at 29, ¶ 80.) Plaintiff also alleges that Defendant Scandle failed to conduct an impartial disciplinary hearing and did not rely upon the evidence presented in finding Plaintiff guilty of the disciplinary charges (Count Four). (Doc. 1 at 29, ¶ 82.) Finally, Plaintiff alleges that Defendant Stahl, who acted as Plaintiff's staff representative for the hearing, failed to provide him with adequate assistance prior to and during the hearing (Count Three). (Doc. 1 at 29, ¶ 81.) The false report and the subsequent hearing allegedly deprived Plaintiff of his right to due process and caused him to lose good-time credit and visitation privileges. Because, as the Magistrate Judge notes, Plaintiff's allegations in Counts Two, Three, and Four necessarily challenge the validity of the punishment imposed on him as a result of the disciplinary hearing, namely his loss of his good-time credits and visitation privileges, Heck bars his claims.

Insofar as Plaintiff alleges that Defendant Stahl provided inadequate counsel in preparation for and during Plaintiff's disciplinary hearing, "an inmate in a disciplinary

12

proceeding has no constitutional right to counsel." Von Kahl v. Brennan, 855 F. Supp. 1413, 1426 (M.D. Pa. 1994) (citing Wolff v. McDonnell, 418 U.S. 539, 570 (1974)). Where an inmate is illiterate or the issues in his case are complex, however, the facility in which he is incarcerated should afford him some assistance to satisfy the spirit of due process. See Wolff, 418 U.S. at 570; see also Von Kahl, 855 F. Supp. at 1426 (citing Silva v. Caset, 992 F.2d 20, 22 (2d Cir. 1993) for the proposition that an inmate should be afforded assistance where pre-hearing confinement conditions interfere with his ability to prepare his defense). As the Magistrate Judge notes, it is clear that Plaintiff is not illiterate. Nor does Plaintiff allege that his case is especially complex or that his confinement precluded him from adequately preparing his defense. We therefore find Plaintiff's ineffective assistance claim against Defendant Stahl to be without merit.

For the reasons discussed above, we will adopt the Magistrate Judge's recommendation and dismiss Counts Two, Three, and Four without prejudice; Plaintiff may file a petition for writ of habeas corpus to address these allegations.[7]

### C. Counts Six, Eight, and Nine: Fifth Amendment Due Process Claims

In Counts Six, Eight, and Nine, Plaintiff essentially alleges that Defendants Sniezek, Dodrill, and Lappin failed to address properly Plaintiff's grievance appeals. The Magistrate Judge recommends that we dismiss these claims as without merit. For the reasons stated below, we agree with the R&R and will therefore dismiss these claims.

Personal liability in a civil rights action "cannot be predicated solely on the operation of respondeat superior." Evancho, supra, 423 F.3d at 353 (quoting Rode, 845 F.2d at 1207); see

---

[7] "A challenge . . . to a disciplinary action that resulted in the loss of good-time credits[] is properly brought pursuant to [28 U.S.C.] § 2241, as the action could affect the duration of the prisoner's sentence." Queen v. Miner, 530 F.3d 253, 255 (3d Cir. 2008).

13

also Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976). The plaintiff must show a defendant's personal involvement with the alleged wrong "through allegations of personal direction or of actual knowledge and acquiescence." Evancho, 423 F.3d at 353. Supervisory status alone is not enough to impose liability on an official in a civil rights action. See Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrence upon which plaintiff's claims are based. See e.g., Hampton, 546 F.2d at 1082.

In the present case, Plaintiff essentially alleges that Defendants Sniezek, Dodrill, and Lappin failed to properly investigate and address Plaintiff's grievance allegations on appeal. He fails to allege that Defendants were personally involved in the underlying conduct that caused Plaintiff to file the grievances. Moreover, Plaintiff's own exhibits support Defendants' appraisal of Plaintiff's CCS. Finally, as the Magistrate Judge points out, because Plaintiff does not have a constitutional right to a grievance procedure, it is difficult to see how he could have a constitutional right to appeal an adverse grievance decision. We will therefore adopt the Magistrate Judge's recommendation and dismiss Counts Six, Eight, and Nine.

### D. Count Ten: Conspiracy/Due Process Claim

In Count Ten, Plaintiff alleges that Defendants Shelby and Bonnell conspired to fabricate a false report against Plaintiff and in doing so violated Plaintiff's Fifth Amendment Due Process rights. The Magistrate Judge recommends that we dismiss Count Ten because (1) Plaintiff's allegations are conclusory rather than factual and (2) inmates have no constitutional right to be free from having false reports filed against them. We agree that Plaintiff fails to state either a conspiracy claim or a due process claim. We will therefore dismiss Count Ten of the Complaint.

"A prisoner does not have a constitutional right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest." O'Connell v. Sobina, 2008 WL 144199, *16 (W.D. Pa. 2008) (citing Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)); see also Flanagan v. Shively, 783 F. Supp. 922, 931 (M.D. Pa. 1992), aff'd 980 F.2d 722 (3d Cir. 1992) ("The filing of charges later proved to be false is not a constitutional violation so long as the inmate is provided with due process, unless the charges were filed in retaliation for the exercise of a constitutional right."). "So long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002). Additionally, with regard to Plaintiff's conspiracy allegations, "it is a longstanding rule in the Third Circuit that a mere general allegation or averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient to state a claim." Flanagan, 738 F. Supp at 933 (quoting Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)).

We find that Plaintiff's allegations that Defendants Shelby and Bonnell conspired against him to be conclusory rather than factual. Moreover, without a constitutional right to be free from having false charges filed against him, Plaintiff fails to state a due process claim. We will therefore dismiss Count Ten of Plaintiff's Complaint.

### E. Counts Five and Seven: Fifth Amendment Equal Protection Claims

Finally, Plaintiff alleges that Defendants Stahl and Whalen conspired against him to falsify his CCS (Count Five) and that Defendant Whalen verbally harassed Plaintiff about his race, his father's identity, and his political beliefs (Count Seven). Plaintiff alleges that Defendants' actions were in violation of the Fifth Amendment's Due Process Clause's equal

15

protection component. The Magistrate Judge recommends that we dismiss Count Five for failure to state a cognizable claim and remand Count Seven for further proceedings. We agree with the Magistrate Judge's assessment of Counts Five and Seven and will therefore adopt the recommendations of the R&R.

"[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups," and the framework for evaluating such claims is analogous to that for Fourteenth Amendment equal protection claims. Washington v. Davis, 426 U.S. 229, 239 (1976) (citing Bolling v. Sharpe, 347 U.S. 497 (1954)).

Equal protection serves "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Vill. of Willowbrook v. Olech, 528 U.S. 564, 564 (2000) (citations omitted). Traditionally, "[i]n order to establish a prima facie case of discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals." Oliveira v. Twp. of Irvington, No. 00-3642, 41 F. App'x 555, 559 (3d Cir. July 25, 2002) (citing Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992)).

Because the purpose of equal protection is to "protect persons, not groups," however, Engquist v. Or. Dep't of Agric., 128 S. Ct. 2146, 2151 (2008) (citations omitted), where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim, Vill. of Willowbrook, 528 U.S. at 564. In order to raise such a

16

claim, a plaintiff must allege that he has been irrationally singled out for disparate treatment. Id. "When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" Engquist, 128 S. Ct. at 2153 (quoting Hayes v. Missouri, 120 U.S. 68, 71–72 (1887)). "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Mosca v. Cole, No. 05-4350, 217 F. App'x 158, 164 (3d Cir. Feb. 14, 2007).

We construe Count Five as a class of one claim rather than a claim that Plaintiff is a member of a protected class. Plaintiff does not suggest that Defendant Stahl either treated Plaintiff differently from any other similarly situated inmate in assessing his CCS or engaged in intentional discrimination. Because Plaintiff has failed to show that Defendant Stahl treated him differently from any other similarly situated inmate, his equal protection claim in Count Five fails.

Moreover, Plaintiff's conspiracy claim against Defendants Whalen and Stahl also fails. "[I]t is a longstanding rule in the Third Circuit that a mere general allegation or averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient to state a claim." Flanagan, 738 F. Supp at 933 (quoting Young, 926 F.2d at 1405 n.16). Plaintiff's own exhibits demonstrate that FCI-Schuylkill officials relied on established procedures to determine his CCS. Plaintiff alleges no facts to show that Defendant Stahl had any involvement in the determining Plaintiff's original CCS; Defendant Stahl merely reviewed Plaintiff's CCS and his allegations against Defendant Whalen

17

later and found them to be without merit. We will therefore adopt the Magistrate Judge's recommendation and dismiss Count Five of Plaintiff's Complaint.

With regard to Plaintiff's allegations against Defendant Whalen in Count Seven, we find that Plaintiff has stated a cognizable class-of-one equal protection claim. Although "mere threatening language and gestures of custodial personnel do not amount to constitutional violations . . . words along with action" may rise to the level of a constitutional violation. Douglas v. Marino, 684 F. Supp. 395, 397 (D.N.J. 1988) (holding that constitutional claim survived a motion to dismiss where a prison employee threatened prisoner at close range with a butcher knife); see also Burton v. Livingston, 7911 F.2d 97, 100 (8th Cir. 1986) (finding sufficient action for a constitutional violation where prison guard pointed a gun at prisoner's head, cocked it, and threatened him with instant death).

In the present case, we agree with the Magistrate Judge that neither the poster of Plaintiff's father in Defendant Whalen's office nor Defendant Whalen's verbal harassment of Plaintiff alone rise to the level of a constitutional violation. That said, however, taking Plaintiff's allegations as true, it is plausible Defendant Whalen irrationally and intentionally treated Plaintiff differently than other similarly situated inmates based on Plaintiff's father's identity. We therefore find that Plaintiff alleges a cognizable claim under the Fifth Amendment. We will remand Count Seven of Plaintiff's Complaint to the Magistrate Judge for further proceedings.

## III. Conclusion

For the foregoing reasons, we will adopt the Magistrate Judge's R&R in full. We will dismiss Plaintiff's Complaint with the exception of Count Seven, which we will remand to the Magistrate Judge for further proceedings. An appropriate order follows.

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMAL HART, | : |
| Plaintiff, | : |
| | : Case No. 3:08-CV-00828 |
| v. | : |
| | : |
| WALTER WHALEN, et al., | : (Judge Kosik) |
| Defendants. | : |

## ORDER

AND NOW, this 22nd day of December, 2009, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Objections (Docs. 23, 29) to the Report and Recommendation are **OVERRULED**;

2. The Report and Recommendation of Magistrate Judge Thomas M. Blewitt, dated July 29, 2009 (Doc. 16), is **ADOPTED**;

3. Counts One, Two, Three, Four, Five, Six, Eight, Nine, and Ten of Plaintiff's Complaint (Doc. 1 at 29-31, ¶¶ 79–84, 86, 88–89) are **DISMISSED**; and

4. Count Seven of Plaintiff's Complaint (Doc. 1 at 30, ¶ 85) is **REMANDED** to the Magistrate Judge for further proceedings.

_____
Edwin M. Kosik
United States District Judge