IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAL HART, | : | CIVIL ACTION NO. **3:CV-08-0828** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WALTER WHALEN, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

## I. Background.

Plaintiff Jamal Hart, formerly an inmate at the Federal Correctional Institution at Schuylkill, Minersville, Pennsylvania, filed this *Bivens*[1] civil rights action, pursuant to 28 U.S.C. § 1331, on May 5, 2008.[2] Plaintiff is proceeding *pro se*. Plaintiff also filed motions to proceed *in forma pauperis.* (Docs. 2 ad 6). By Order of June 3, 2008, Plaintiff was directed to pay a partial filing fee of $96.09 (20% of his account balance of $480.43), with the remaining balance to be paid *via* installment payments from his prison account. (Doc. 10). On June 16, 2008, Plaintiff paid a partial filing fee in the amount of $144.00. (Doc. 12). On July 10, 2008, Plaintiff paid the remaining balance of the $350.00 filing fee. (Doc. 15).

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).

[2] The record reveals that Plaintiff Hart was confined at FCI-Schuylkill from October 30, 2006 through October 29, 2007, when he was transferred to FCI-Loretto. (Doc. 50, Ex. B, ¶ 4.). Subsequently, Plaintiff was transferred to The Troy House, Durham, North Carolina, the place where he is currently housed. *See* Doc. 66. The remaining equal protection claim in this case against Defendant Whalen arose during Plaintiff's confinement at FCI-Schuylkill.

On July 29, 2008, we screened Plaintiff's Complaint as required under the PLRA and recommended that all of Plaintiff's claims except for his Fifth Amendment equal protection claim against Defendant Whalen be dismissed. (Doc. 16).

In our July 2008 R&R, we detailed Plaintiff's remaining claim against Defendant Whalen as follows:

> As stated, Plaintiff's Fifth Amendment Equal Protection claim against Defendant Whalen is as follows:
>
> > The action of Defendant Whalen in racially Harassing Plaintiff (a African/American inmate), by Posting a poster of Plaintiff's Father (Whom is Mumia Abu-Jamal - a Political Prisoner who resides in a Pennsylvania State Prison on "Death-Row") Picture on his office wall for purpose of ridicule and intimidation based on Plaintiff's Father and his race and Political Views constituted racial discrimination.
>
> (Doc. 1, p. 25, ¶ 85., Count 7).
>
> According to the Complaint, Defendant Whalen allegedly wrote on the poster of Plaintiff's father "He has fooled the world he is innocent. But he is guilty of murdering Police Officer Daniel Faulkner!" (Doc. 1, p. 14, ¶ 49). Plaintiff also contends he noticed this picture of his father while in a confrontation with Defendant Whalen which allegedly included threats and racial slurs directed at Plaintiff. (*Id.*, ¶'s 48-49).
>
> We have previously found that Plaintiff's allegations of verbal harassment by Defendant Whalen do not rise to the level of a constitutional violation. Mere words spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights by the officer. *Johnson v. Glick*, 481 F.2d 1028, 1033 n. 7 (2d Cir.1973); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979) (verbal harassment by threatening to hang an inmate is not sufficient to state a constitutional deprivation under §1983). "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir.2000). A constitutional claim based only on verbal threats will fail if it is asserted under the Fifth Amendment's substantive due process clause. *See Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir.), *cert denied*, 502 U.S.

879 (1991). Based on this, we will recommend the Plaintiff's Fifth Amendment Equal Protection claim against Defendant Whalen be dismissed, insofar as he alleges Whalen racially harassed him and yelled abusive threats at him.

Further, verbal harassment or threats, with some reinforcing act accompanying them may state a constitutional claim, as, for example, a case where some action was taken by the Defendant that escalated the threat beyond mere words. *See Northington v. Jackson*, 973 F.2d 1518 (10th Cir.1992) (a correctional officer placed a revolver to an inmate's head a threatened to shoot); *Douglas v. Marino*, 684 F.Supp. 395 (D.N.J.1988) (involving prison employee who threatened an inmate with a knife.).

In our case, the question arises as to whether the alleged poster of Plaintiff's father hung on Defendant Whalen's office wall is a reinforcing act accompanying the alleged racially insensitive speech of Defendant Whalen. The mere hanging of a poster, no matter who is depicted, cannot be determined as a physical act accompanying Defendant Whalen's alleged threatening speech like those in *Northington* and *Douglas*. Furthermore, Plaintiff admits he came across, on his own, the poster of his father that Defendant Whalen allegedly posted on the wall in his office, and nowhere does Plaintiff seem to claim that Defendant Whalen specifically or intentionally pointed this poster out to Plaintiff in a way meant to intimidate and/or discriminate against the Plaintiff. There was nothing racially insensitive written on the poster. Plaintiff states that the poster had the following message written across it, "He has Fooled the World He is Innocent. But He is Guilty of Murdering Police Officer Daniel Faulkner!." (Doc. 1, ¶ 49.). Further, when Defendant Whalen acknowledged that Plaintiff looked at the poster, Plaintiff avers that Whalen told him "there is nothing you can do about it as I show every staff what a murderer your father really is and your Black -#ss want to be just like him!!."

In *D'Altilio*, the Court stated that "under the class-of-one theory, a Plaintiff may have an equal protection claim even absent protected-class status if he or she alleges irrational and intentional differential treatment when compared with similarly situated individuals." 2007 WL 2845073, * 8 (citation omitted).
Based on Plaintiff's allegations (Doc. 1, ¶'s 48- 49.), in taking them as true, as we must, we find that Plaintiff has sufficiently stated that Defendant Whalen has treated him differently than similarly situated inmates without a rational purpose for doing so based on who Plaintiff's father is. Thus, we find that Plaintiff has stated a Fifth Amendment equal protection claim against Defendant Whalen in Count 7. Therefore, we will recommend this claim (Count 7) be allowed to proceed against Defendant Whalen.

(Doc. 16, pp. 37-39).

On December 22, 2009, the District Court overruled Plaintiff's objections and adopted our Report and Recommendation ("R&R"). (Doc. 34).

Thus, this matter is presently proceeding against the sole remaining Defendant, Walter Whalen, Plaintiff's Case Worker at FCI-Schuylkill, with respect to only Count Seven of Plaintiff's Complaint. (*See* Doc. 34, December 22, 2009 Memorandum and Order of the District Court).

Subsequently, Defendant Whalen was personally served with Plaintiff's Complaint on January 29, 2010. (Doc. 39). On May 21, 2010, in response to Plaintiff's Complaint, Defendant Whalen filed a Motion to Dismiss and for Summary Judgment. **(Doc. 48).** On June 4, 2010, Defendant filed his brief in support of his motion, with attached exhibits, and his Statement of Material Facts ("SMF"). (Docs. 50 and 51).

Plaintiff then filed Motions for Extension of Time to file his opposition brief to Defendant's dispositive Motion, which were granted by the Court. After Plaintiff was repeatedly afforded additional time to file his brief in opposition to Defendant's Doc. 48 Motion, Plaintiff filed his brief on September 15, 2010, as well as his response to Defendant's SMF and exhibits in support of his opposition brief. (Docs. 59-61).

Defendant filed his reply brief on September 29, 2010. (Doc. 65). Since both Plaintiff and Defendant filed extensive exhibits with respect to Defendant's Motion, and since Plaintiff was on notice that Defendant also moved for summary judgment, we shall consider

Defendant's Motion as one for Summary Judgment. Defendant's Summary Judgment Motion is ripe for disposition.[3]

The initial basis of Defendant's Motion for Summary Judgment is that Plaintiff failed to exhaust his administrative remedies available through the BOP with respect to his remaining Fifth Amendment claim. Based on Defendant's Statement of Material Facts and Plaintiff's response thereto, as well as the exhibits submitted by the parties, we agree with Defendant that Plaintiff failed to exhaust his remaining claim.[4] We also agree with Defendant that even if Plaintiff did exhaust his claim, Defendant is entitled to qualified immunity.

**II. Statement of Material Facts**.

Defendant has properly filed his SMF in support of his Summary Judgment Motion (Doc. 51), as required by Local Rule 56.1 of M.D. Pa., and he cites to his evidence to support his facts. Plaintiff properly responded to Defendant's SMF with citation to his evidence as required by Local Rule 56.1, M.D. Pa. (Doc. 60). *See Cyrus v. Laino*, Civil No. 08-1085, M.D. Pa.; *Cyrus v. Freynik*, Civil No. 08-2278, M.D. Pa.; *Michatavi v. Martinez*, 2009 WL 5172962 (M.D. Pa.); *Hemingway v. Ellers, 2008 WL 3540526 (M.D. Pa.); Accolla v. U.S.*, 2009 WL 3625383 (M.D. Pa.), affirmed 2010 WL 763550 (3d Cir.).

---

[3]We were assigned this case for pre-trial matters pursuant to 28 U.S.C. §636(b)(1).

[4]Since exhaustion is a threshold issue, we discuss it first. *See Lasko v. Hendershot*, 2006 WL 2828787 (M.D. Pa. 9-29-06). We also address Defendant's second basis for summary judgment asserted in his motion, namely, that he is entitled to qualified immunity with respect to Plaintiff's remaining claim, even though we find that Plaintiff has not exhausted his administrative remedies.

Defendant's first argument in his Summary Judgment Motion and support Brief (Doc. 50, pp. 9-11) is his assertion that Plaintiff failed to exhaust his available BOP administrative remedies, prior to filing his Complaint, with respect to his stated remaining claim. Specifically, Plaintiff alleges that on August 7, 2007, Defendant Whalen had a picture of his father on his office wall with a handwritten message on it, and that Whalen harassed Plaintiff about his race, his father's identity and his political beliefs. Defendant submitted exhibits to support his failure to exhaust contention, namely, the Affidavit of Joseph McCluskey, BOP Senior Attorney at FCC-Allenwood. (Doc. 50, Ex. B). Also, as stated, Defendant filed his SMF (Doc. 51) with his brief, as required by Local Rule 56.1, M.D. Pa., to support his position that Plaintiff did not exhaust his available BOP administrative remedies. Plaintiff, as mentioned, filed his paragraph-by-paragraph response to Defendant's SMF with citation to evidence as he was obliged to do. (Doc. 60). Plaintiff also submitted several exhibits, including his 21-paragraph Affidavit. (Doc. 61 and Ex. A).

Defendant's SMF largely pertain to his failure to exhaust defense and they are denied by Plaintiff in his Affidavit. (Doc. 51, ¶'s 18.-33. and Doc. 61, Ex. A). Defendant has submitted the Declaration of McCluskey to support his failure to exhaust argument. McCluskey avers in his Declaration:

> 10. On May 7, 2010, I conducted a search of the records to determine whether the Plaintiff had exhausted available administrative remedies regarding the claim he alleges against Defendant Whalen in this action. A careful review of the records indicates that Plaintiff has failed to raise the specific issue that Defendant Whalen harassed, ridiculed, and intimidated him because of his race and political beliefs on August 7, 2007. See [Doc. 50, Ex. B] Attachment 3, Administrative Remedy Generalized Retrieval.

6

11.     Specifically, the Plaintiff has filed a total of 85 administrative remedies.  Only seven (7) of these remedies were filed while the Plaintiff was housed at FCI Schuylkill from October 30, 2006 through October 29, 2007.  Out of the seven, only one (1) was filed after the date in question, August 7, 2007.  That remedy (452299-A1), filed September 26, 2007 with the Central Office, was an appeal of a Regional Office denial.  **The original remedy (452299-F1) and the Regional appeal (452299-R3) were filed on June 25, 2007 and July 30, 2007, respectively.**  See Attachment 3.

12.     The administrative remedies filed by Plaintiff (452299-F1, -R3 and -A1) claimed that Defendant Whalen inappropriately changed Plaintiff's custody classification scoring which resulted in Plaintiff not being transferred to a low security institution.  He claimed that Defendant's action was unprofessional and racially motivated.  See [Doc. 50, Ex. B] Attachment 4, Administrative Remedies 452299-A1, -R3, and A1.

(Doc. 50, Ex. B, ¶'s 10.-12.) (Emphasis added).

Plaintiff avers in his Declaration as follows:

20.     I exhausted my administrative remedy #452299.  As all issues are related issues was timely filed and deemed accepted for review and not denied but processed by higher B.O.P. officials.  Appeal to the General Counsel is the final administrative appeal.  Appeals shall state specifically the reason for appeal.  (Part 542- Administrative Remedy Program).  If it's procedures are not done accurate by Plaintiff it would not have been accepted and responded, it would have been rejected.  (PART 542- Administrative Remedy Program).

21.     Being that B.O.P. Washington Central Office accepted this grievance issues as obviously being related issues from staff misconduct or wrong doing.  Clearly, as being related to this grievance or B.O.P. would have not issued an acknowledgment receipt and considered it filed.  If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. (PART 542- Administrative Remedy Program).  By sending an acknowledgment receipt and including their Requested time extensions making it a timely response/ answer verifies this complaint as accepted.  So B.O.P. have the exclusive right to Reject any grievance that is not properly filed or do not have related issues included.  This is not the case here, because plaintiff

included (Attorney Protest letter) as [Evidence-Exhibit #P-5] attachment within grievance, that B.O.P. accepted and timely responded within Administrative Remedy Response Number 452299-A1 dated November 26, 2007, signed by Harrell Watts- Administrator/National Inmate Appeals. Once filed, response shall be made by the General Counsel within 40 days. Staff shall respond in writing to all filed Request or Appeals. [PART 542- Administrative Remedy Program].

(Doc. 61, Ex. A, ¶'s 20.-21.).

There is no dispute that Plaintiff initially filed Administrative Remedy #452299 on June 25, 2007, well before the alleged August 7, 2007 incident at issue with Defendant Whalen. (Doc. 50, Ex. B, Att. 4).[5] On July 6, 2007, Warden Sniezek responded to Plaintiff's June 25, 2007 Administrative Remedy #452299 and denied Plaintiff's complaint that his Case Manager, Defendant Whalen, "acted with deliberate malfeasance by changing [Plaintiff's] custody points, thereby making [Plaintiff ] ineligible for a 'low' security institution." (Doc. 50, Ex. B, att. 4).[6] Warden Sniezek stated as follows in his Response:

A review of this matter indicates you arrived at FCI, Schuylkill from FCI, Raybrook on October 30, 2006. Upon your arrival, your custody classification score (BP-338) form noted a security total of 21 points. Upon further review, the Unit Team lowered your custody classification score to a total of 15 points on December 14, 2006, after it was determined that your Criminal History Score was incorrect. This correction modified your Criminal History Points to 4 from the original Criminal History Points of 10, and resulted in the decrease in your total security points. This later decrease in your security point total to 15 points would have made you eligible for consideration for transfer to a "low" security institution. However, the Unit Team determined that the scoring in

---

[5] *See* Doc. 50-4, p. 65. We note that Defendant's exhibits are also docketed as Doc. 50-4, pp. 1-74.

[6] *See* Doc. 50-4, p. 67-68.

the areas of "program participation" and "living skills" was not reflective of your actual level of program participation and adjustment at FCI, Schuylkill. Therefore, on February 2, 2007, staff decreased the original scoring in the areas of "program participation" and "living skills" to an overall "average" level, from the previous "good" level, as scored by FCI-Raybrook staff. This change increased your overall security point total to 16.  FCI, Schuylkill staff used sound correctional judgment in reassessing these program areas, as you were at FCI, Schuylkill only several months, and staff could not properly assess your level of program participation, as well as your overall demeanor, attitude, personal accountability and nature of interaction with staff and other inmates.  In fact, you have not been involved in any programming at FCI, Schuylkill, even though staff, at your initial classification recommended your participation in, at least, one Adult Continuing Education or Post Secondary Education course by December, 2006, and a Vocational Training course by January, 2007.  Program Statement 5100.08, Inmate Security Designation and Custody Classification, dated September 12, 2006, Chapter 6, Page 10, section 2 indicates an inmate with a "good" level of program participation is an inmate who actively participates in multiple recommended programs. Also, section 3 defines "Living Skills."  This area of scoring reflects the inmate's living skills during the past 12 months, and is based on the inmate's demeanor, attitude, personal accountability and nature of interaction with staff and other inmates.  As stated previously, staff used sound correctional judgment in reassessing both of these scoring areas of your custody/classification form.

On April 19, 2007, you were involved in an altercation with another inmate in the housing unit.

Subsequently, on April 23, 2007, you were found guilty of Fighting With Another Inmate, Code 201, by the Disciplinary Hearing Officer.  Again, staff used sound correctional judgment in restoring your custody/classification form to reflect this incident.  Subsequently, this incident has been reflected on your current custody/classification form, and your total security scoring is now 18 points.  Staff will continue to consider your transfer at subsequent program reviews.  However, to maximize your opportunity for a transfer to a less secure institution, it is strongly encouraged that you participate in recommended programming and maintain clear conduct.

> I believe staff acted appropriately in the restoring of your custody classification form. Therefore, your Request for Administrative Remedy is denied.

(Doc. 50-4, pp. 67-68).

Plaintiff then timely filed his Regional Appeal of Warden Sniezek's Response to his Administrative Remedy #452299 on July 30, 2007. (Doc. 50, Ex. B, att. 4).[7]  On August 28, 2007, BOP Regional Director Dodrill responded to Plaintiff's appeal of his Administrative Remedy #452299 and denied Plaintiff's appeal.  (Doc. 50, Ex. B, Att. 4).[8]   Dodrill stated as follows in his Response:

> A review of your Custody Classification form indicates you are appropriately scored in all categories.  You are correctly scored for Disciplinary Reports as the DHO found you committed a prohibited act on April 23, 2007.  Scoring of your Living Skills was rated as average based on your demeanor, attitude, personal accountability and nature and interaction with staff and other inmates.  Scoring of your Program Participation was rated as average based on your lack of participation in active programs.  Finally, your Criminal History Score is based on your criminal history as documented in your Pre-Sentence Report.  Based on this information, your assigned point total is 18 points.  Your Custody Classification will be reconsidered at your annual review, tentatively scheduled for June 2008.  You may address any issues you have at that time.  Your allegation of staff misconduct is without merit as you have provided no evidence staff purposely or maliciously obstructed your classification or request for a transfer.  Accordingly, your appeal is denied.

(Doc. 50-4, p. 71).

---

[7]*See* Doc. 50-4, p. 69-70.

[8]*See* Doc. 50-4, p. 71.

Plaintiff appealed Dodrill's Response to the BOP Central Office on September 26, 2007. (Doc. 50, Ex. B, Att. 4).[9] On November 26, 2007, BOP Administrator of National Inmate Appeals, Harrell Watts, issued a Response to Plaintiff's Administrative Remedy #452299 and denied Plaintiff's appeal. (Doc. 50, Ex. B, Att. 4).[10]

Thus, there is no dispute that Plaintiff fully exhausted his Administrative Remedy #452299 on November 26, 2007. (Doc. 61, Exs. J-1 and J-2). Rather, the parties dispute whether Plaintiff's Administrative Remedy #452299 sufficiently referred to the August 7, 2007 incident with Defendant Whalen and Plaintiff's instant remaining equal protection claim that Whalen had a picture of his father on his office wall to harass and discriminate against Plaintiff, and to create ill-will amongst prison staff towards Plaintiff.

We address below in more detail the evidence as it pertains to Defendant's exhaustion defense.

### III. Motion for Summary Judgment Standard.

In *Allen v. Fletcher*, 2009 WL 1542767, *2 (M.D. Pa.), the Court outlined the applicable standard to apply when considering a summary judgment motion as follows:

> Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.

---

[9]*See* Doc. 50-4, pp. 72-73 and Doc. 61, Ex. J-1.

[10]*See* Doc. 50-4, p. 74 and Doc. 61, Ex. J-2.

2505, 91 L.Ed.2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2D § 2727 (2d ed.1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson,* 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

"Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.,* 372 F.3d 517, 521 (3d Cir. 2004).

**IV. Discussion.**

    *1. Exhaustion of Administrative Remedies*

    Defendant first argues that he is entitled to summary judgment as a matter of law because Plaintiff failed to exhaust administrative remedies available by the BOP as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997 ("PLRA"). Defendant asserts this argument with respect to Plaintiff's remaining equal protection claim. As noted, the exhaustion of Plaintiff's claim against Defendant Whalen is a threshold issue. *See Lasko, supra; Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 2007)(Non-Precedential); *Hemingway v. Ellers*, 2008 WL 3540526, *8. As discussed below, we will recommend that Defendant's Summary Judgment Motion be granted with respect to the exhaustion issue because the undisputed evidence shows that Plaintiff did not exhaust his available administrative remedies regarding his remaining claim against Defendant as required under the PLRA. As Defendant points out, Plaintiff only exhausted his claim that Defendant failed to correct his custody classification to prevent his transfer to a low security prison. Also, as Defendant indicates, the District Court dismissed this claim in its December 22, 2009 Memorandum. (Doc. 34). The District Court only allowed Plaintiff to proceed with his equal protection claim against Defendant Whalen regarding the picture of Plaintiff's father Defendant had on his office wall on August 7, 2007. (*Id*.). We concur with Defendant that Plaintiff's attempt to now say that both claims were interrelated and that exhaustion of his classification issue was sufficient to exhaust his equal protection claim must fail. We find that Plaintiff could not exhaust his August 7, 2007 equal protection claim by adding it to his September 26, 2007 final appeal of his Administrative Remedy #452299 to the Central

13

Office.  *See Bartholomew v. Federal BOP*, 2008 WL 4400170, * 4 - * 5 (M.D. Pa. 9-23-08) (inmate had to raise the same claims in his Administrative Remedy and in his appeals with BOP in order to exhaust them).

The PLRA provides that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility, until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id*.  "A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit."  *Lombardi v. Pugh*, 2009 WL 1649908, *3(M.D. Pa. 6-9-09)(citation omitted).  Further, "the exhaustion requirement is not satisfied if the inmate files an action in the district court prior to completing the administrative remedy process."  *Id*. (citation omitted).

The Third Circuit Court of Appeals has held that the defendant has the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action.  *Ray v. Kertes*, 285 F.3d 287, 295-96 (3d Cir. 2002); *Hemingway v. Ellers*, 2008 WL 3540526, *9.  The Third Circuit has repeatedly stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*,

2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted); *Accolla, supra*.

The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion

requirement is completely precluded. *Id.; Spruill v. Gillis,* 372 F. 3d 218, 228-230 (3d Cir.

2004).

There is no dispute that BOP had an administrative remedy policy during the

relevant times of this case. (Doc. 50, Ex. B, ¶'s 5.-6.). *See also Cooper v. Sniezek*, 2010 WL

3528848, *7-*8 (M.D. Pa. 9-7-10); *Bartholomew, supra*. As stated, it is undisputed that Plaintiff

originally filed Administrative Remedy #452299 on June 25, 2007, well before the alleged

August 7, 2007 incident with Defendant Whalen which forms the basis of Plaintiff's remaining

equal protection claim. (Doc. 50, Ex. B, Att. 4).[11] Also, it is not disputed that Plaintiff fully

exhausted his Administrative Remedy #452299 on November 26, 2007. (Doc. 61, Exs. J-1 and

J-2 and Doc. 50, Ex. B, Att. 4).[12]

We find that Defendant's evidence shows that he is entitled to summary judgment in

this case based on the exhaustion issue. We find that Plaintiff's evidence only shows that he filed

his final appeal of the denial of his Administrative Remedy #452299 with the BOP Central

Office on September 26, 2007. While Plaintiff briefly referenced, in his final appeal, his instant

---

[11]*See* Doc. 50-4, p. 39 and pp. 65-66.

Plaintiff has failed to submit as evidence a copy of his original Administrative Remedy #452299 which he undisputedly filed on June 25, 2007, well before the August 7, 2007 alleged incident with Defendant Whalen. As indicated, Defendant has filed a copy of Plaintiff's original Administrative Remedy # 452299. (Doc. 50, Ex. B, Att. 4).

[12]*See* Doc. 50-4, pp. 72-74.

15

claim that Defendant Whalen had a poster of his father on his office wall, Plaintiff failed to file, in

a timely manner, a separate administrative remedy which specifically complained about the

August 7, 2007 incident with Defendant Whalen and which specifically included his remaining

equal protection claim against Defendant Whalen. (Doc. 61, Exs. J-1 and J-2). Specifically, in his

Central Office appeal of his June 25, 2007 Administrative Remedy #452299, Plaintiff concluded

as follows:

> RESOLUTION: TERMINATION OF EMPLOYMENT for Walter Whalen/Cas[e]
> Manager thwart abuse of authority, vindictive acts of insidious malice of
> intentional misconduct to prevent me discriminatorily from transferring to
> a LOW SECURITY FACILITY roguery leads to Insubordination. See, 28 C.F.R.
> §32.7 (Intentional Misconduct of officer); §40.9 (Reprisals); §551.90
> (Non-Discrimination Toward Inmate). Policy Statement 3420.09 [Employee
> Conduct & Standards - SANCTIONS]; #5 (Failure or delay in carrying out
> orders); #7 (Insubordination - Disobedience to constituted authority) Whalen
> refused to put my LOW TRANSFER REFERRAL PACKET to Designation Office
> on or around 12/14/06; #28 (Preferential Treatment) Whalen put White &
> Latin Inmate in for Low Custody Transfer instead of myself African-American
> Inmate; #32 (Destruction of Records to Conceal Facts, and a concealed
> conflict of interest in the performance of duty) **Whalen placed a Poster of
> my Father on Death row on his office wall, to create a hostile environment.**
> My private attorneys was contacted Mr. Piper & Mr. Levy of these vindictive
> and rogue acts of this rampant racist Whalen, the letters was sent to Warden
> T.R. Sniezek, Regional Director D. Scott Dodrill and F.B.O.P. Director Harley
> G. Lappin. See, [EVIDENCE -EXHIBIT #P-5] Attorney letter; #9 (Disrespectful
> Conduct). A investigation for the rogue incompetence under color of authority,
> such hubris and visceral acts are emotional instability that is racially
> motivated. It's imperative to expunge & restore my original +15 points Scoring
> in Good Faith to ameliorate this existing problem. I hope for NO Future nor
> Present Reprisals for exercising my Administrative Remedy Right.

(Doc. 61, Ex. J-1, p. 2, last ¶) (Emphasis added).

The evidence also shows that on November 26, 2007, BOP Administrator of National Inmate Appeals, Harrell Watts, issued the following Response to Plaintiff's Central Office appeal of his Administrative Remedy #452299:

> You contend a staff member has discriminated against you by manipulating your security/custody score in an effort to prevent your transfer to a low-security prison. You request the staff member be terminated.
>
> Our review of this matter reveals both the Warden and Regional Director have adequately addressed your concerns. Review of the record reveals your security designation and custody classification scores have been adjusted either positively or negatively, by staff when warranted and appropriate. Staff actions in this matter are consistent with the requirements of Program Statement 5100.08, <u>Security Designation and Custody Classification Manual.</u> There is no evidence staff have acted in a discriminatory manner.
>
> It is noted you are currently scored as a low-security inmate and were transferred to a low-security prison on November 1, 2007.
>
> Your appeal is denied.

(Doc. 61, Ex. J-2).

Thus, in light of the stated evidence offered by both Plaintiff and Defendant, we agree with Defendant that Plaintiff's June 25, 2007 Administrative Remedy #452299 could not have possibly mentioned the alleged August 7, 2007 incident in Defendant's office since it was alleged to have occurred well after Plaintiff initially submitted his Administrative Remedy #452299. In fact, Plaintiff dated his Administrative Remedy #452299 on June 18, 2007, prior to the time when his remaining equal protection claim against Defendant Whalen arose. (Doc. 50-4, p. 65).

As indicated above, Plaintiff's September 26, 2007 Central Office appeal of his

Administrative Remedy #452299 for the first time specifically referred to his instant claim and

his allegation that "Whalen placed a poster of my father on death row on his office wall to

create a hostile environment." (*Id*., p. 73). However, Plaintiff failed to timely raise this claim in a

separate administrative remedy request as he was required to do. *See Bartholomew, supra*.

Plaintiff was required to file his new Administrative Remedy within twenty (20) days of the

August 27, 2007 incident. Plaintiff did not, and he procedurally defaulted this claim against

Defendant.

The *Cooper* Court stated as follows:

An inmate may challenge any aspect of his or her confinement using the BOP's administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq*. An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id*. at § 542.14(a). The inmate has twenty (20) days following the date on which the basis for the complaint occurred in which to complete informal resolution and submit a formal written administrative remedy request. *Id*. The procedure further provides that an extension may be allowed where an inmate demonstrates a valid reasons for delay. *Id*. at § 542.14(b). The regulation states, in part:

> Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request of Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request of Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

*Id*. If dissatisfied with the response to the formal written request, the inmate may then appeal an adverse decision to the Regional Office and the Central Office of BOP's General Counsel. *Id*. at §§ 542.15(a) and 542.18. No administrative appeal is

considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. *Id.* at § 542.15(a).

2010 WL 3528848, *7-*8.

The *Cooper* Court also stated:

> A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). "[I]t is beyond the power ... of any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894-95 (S.D.N.Y.1998) (citing *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis,* 204 F.3d at 71. The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo,* 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."*Id.* at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 93 (quoting *Nussle,* 534 U.S. at 525). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis,* 372 F.3d 218, 227-32 (3d Cir.2004).

2010 WL 3528848, *7.

Based on the stated evidence, we agree with Defendant 's assertions made in both his main brief (Doc. 50, p. 11) and his reply brief (Doc. 65, p. 5) that Plaintiff's initial Administrative Remedy #452299 filed on June 25, 2007, did not "mention the alleged incident in Defendant's office on August 7, 2007 which is the basis for the sole remaining claim." Plaintiff's June 25, 2007 Administrative Remedy #452299 clearly could not have mentioned his

instant remaining claim that on August 7, 2007, Defendant Whalen had a poster of his father on Whalen's office wall "to create a hostile environment" against him.

Plaintiff states that he did not have to file a new administrative remedy concerning his equal protection claim against Defendant which arose on August 7, 2007, since he eventually received a satisfactory result regarding his custody classification and a transfer to a low security prison after he filed his June 25, 2007 Administrative Remedy. Plaintiff points to his Doc. 61, Ex. H, a letter Warden Sniezek wrote to Attorney Piper dated September 26, 2007, about Plaintiff's security classification and stated that Plaintiff was currently classified as "low". In particular, Warden Sniezek stated:

> Dear Mr. [Attorney] Piper:
>
> I am in receipt of your letter dated August 22, 2007, concerning Jamal Hart, an inmate who is currently housed at the Schuylkill Federal Correctional Institution, Minersville, Pennsylvania. You indicate his Case Manager is displaying a poster condemning Mumia Abu-Jamal, Mr. Hart's father. Also, you indicate his Case Manager artificially inflated his security score.
>
> The item concerning your client's father has been removed. Also, Mr. Hart's security level points have recently been reviewed, and he is currently classified as a "low" security level inmate. Accordingly, he will be considered for a transfer to a low security institution.

(Doc. 61, Ex. H).

Plaintiff contends that since he eventually received his relief he essentially requested in his Administrative Remedy #452299, he was not required to submit a new Administrative Remedy with respect to Defendant's August 7, 2007 alleged arbitrary refusal to lower his custody

level so he could be transferred to a low security prison based on the poster of his father

Defendant had on his office wall.   Plaintiff states as follows:

> [T]he ongoing closely related issue of Mr. Whalen's arbitrary abuse from
> intentionally inflating Plaintiff's CCS unjustly that lead to his ongoing
> further punishment and animus towards Plaintiff by knowingly placing
> a Poster/Picture of his father Mumia Abu Jamal on his office wall to
> provoke and harass, has been accepted by BOP Higher Officials as closely
> related, as he was disciplined by BOP agency.  The provocative Picture/Poster
> of Mumia Abu Jamal Hart's father was ORDERED and Removed, as his
> unjustly inflated CCS by Defendant was also ORDERED and Corrected by
> WARDEN/Sniezek as they both was closely related issues the BOP remedy
> in action and denied only in words.  As Hart was transferred to Low-Custody
> facility.  The General Counsel and Warden/Sniezek both responded, as
> previous attorney letter and final grievance supports these issues are closely
> related and was remedy in tandem.  (See Ex. J#1-Specifically RESOLUTION
> section in administrative remedy #452299-A1; and also see, Ex. J#2 - BOP
> officials via Warden response letter remedy the problem).

(Doc. 60, pp. 6-7).

    We agree entirely with Defendant's response to Plaintiff's above argument as stated

in Defendant's reply brief.  Defendant states:

> In his opposition brief, Hart argues that the exhaustion of
> Remedy No. 452299 should be interpreted by the Court as exhaustion
> of the remaining claim, reasoning that these claims are "closely related"
> (Doc. 60 at 6, Pl's Statement of Facts.)  This assertion is belied by Hart's
> own exhibits  – copies of this remedy request and the BOP Central Office's
> response to this request (Doc. 61, Ex. J-1 and J-2, Ex.)  Neither Hart's request
> nor the BOP's response mention the alleged incident in Defendant's office
> on August 7, 2007 which is the basis for the sole remaining claim.  This
> remedy solely addresses Hart's challenge to his custody classification and
> his request to transfer to a low security facility.  These are two separate
> claims, as evidenced by the Court's previous decision to dismiss one (the
> custody classification claim) [Doc. 34] and order that the other proceed (the
> claim regarding the alleged August 7, 2007 events).  Accordingly, this Court
> should dismiss the remaining claim for failure to exhaust administrative remedies.

(Doc. 65, pp. 4-5).

We find that Plaintiff added his present equal protection claim regarding the picture of his father which Defendant had on his office wall, for the first time, in his September 26, 2007 final appeal of his Administrative Remedy #452299 to the BOP Central Office. We find that when Plaintiff initially submitted his Administrative Remedy #452299, it did not provide the required information to put prison officials on notice that he was asserting his present equal protection claim against Defendant Whalen. Plaintiff was required to submit a new administrative remedy with the BOP after the August 7, 2007 incident with Defendant Whalen regarding his equal protection claim. Plaintiff could not simply add this new claim during the final appeal of his June 2007 Administrative Remedy #452299 as he did in this case.

Defendant points to the District Court's December 22, 2009 Memorandum in which it adopted our R&R screening Plaintiff's Complaint. In the District Court's December 22, 2009 Memorandum, it addressed Plaintiff's First Amendment retaliation claim which alleged that Defendant Whalen retaliated against him when he [Plaintiff] spoke to Whalen's supervisor to try and get his CCS corrected to low security. The District Court held:

> In the instant case, Plaintiff essentially alleges that Defendant Whalen retaliated against Plaintiff when Plaintiff spoke to Helder, Defendant Whalen's supervisor in an attempt to correct his CCS. While "[i]t is well-settled that an inmate has no recognizable constitutional right to a particular custody status," nor to being placed in any particular prison, Smith v. United States, 2007 WL 4270602, * 11 (M.D. Pa. 2007) (citing Olim v. Wakinekona, 461 U.S. 238 (1983)); see also Hart v. Whalen, 2008 WL 4107651, * 6 (dealing with a similar claim by the instant plaintiff), Plaintiff's complaints to Helder may be constitutionally protected conduct, see, e.g., Mulhouse v. Carlson, 652 371, 373-74 (3d Cir. 1981) ("A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim."). Even reviewing the allegations in the light most favorable to Plaintiff, we find that the increase in Plaintiff's CCS was based on FCI-Schuylkill's custody classification guidelines rather than retaliatory motives. [FN5]

FN5 Plaintiff's own exhibits establish the standards used to determine his CCS. (See Doc. 1, Att. 5 (noting that while FCI-Schuylkill staff decreased Plaintiff's CCS because of corrections to his criminal history report, they also increased the score to reflect Plaintiff's participation in required programs, which resulted in a net increase in Plaintiff's score).)

(Doc. 34, pp. 10-11).

We also agree with Defendant (Doc. 65, p. 10), that Plaintiff's own evidence shows that he was not involved with Plaintiff's initial classification by BOP staff, and that he was not involved with Plaintiff's initial confinement in a medium security prison as opposed to a low security prison. (Doc. 61, Ex. O, pp. 4-5.).[13] Plaintiff's own evidence also shows that Plaintiff began complaining that his CCS was incorrectly calculated and that he should be classified as a low security inmate before his present equal protection claim against Defendant arose. (Id.).

Therefore, we will recommend that Defendant's Summary Judgment Motion be granted with respect to the exhaustion issue, and that judgment be entered in favor of Defendant Whalen and against Plaintiff Hart.

Moreover, even if the Court finds that Plaintiff did exhaust his remaining claim against Defendant, we agree with Defendant that he is entitled to qualified immunity.

2. *Qualified Immunity*

As his second argument, Defendant Whalen contends that Plaintiff Hart's remaining claim against him should be dismissed since it is not a cognizable claim in a §1983 action and as such he is entitled to qualified immunity. (Doc. 50, pp. 12-18). Defendant argues that the

---

[13]Doc. 61, pp. 57-58.

undisputed evidence shows that Plaintiff has failed to establish a class of one equal protection claim since he was not responsible for Plaintiff's initial custody classification which Plaintiff had challenged before he was transferred to FCI-Schuylkill, and since Plaintiff failed to show any relationship between his custody score and the picture of his father on Defendant's office wall.

Insofar as Plaintiff alleges that Defendant had a poster of his father on his wall with handwritten comments, Defendant avers as follows:

> 7.  As for the poster, I did not have a poster in my office of Plaintiff's father, but rather I did have a copy of a newspaper article posted on a bulletin board in my office. It was an article copied, on 8.5" x 11" paper, from a newspaper referencing the potential changes in the crack cocaine laws. A portion of the copy also contained an article regarding Mumia Abu-Jamal. I did not handwrite the message alleged by plaintiff across the article. I was not aware that Plaintiff was related to Mumia Abu-Jamal. In addition, Plaintiff never said anything to me about the article. I learned of Plaintiff's issue with the article and the fact that Mumia Abu-Jamal was his father weeks later, at which time I immediately removed the article from my office bulletin board.

(Doc. 50, Ex. A, ¶ 7.).

Plaintiff counters Defendant's Declaration with his own Declaration in which he avers:

> 3.  I saw and noticed an picture/POSTER to provoke, and harass me, by condemning my father Mumia Abu-Jamal with the words across this Picture/Poster stating, "He has Fooled The World He is Innocent. But He is Guilty of Murdering Police Officer Daniel Faulkner"! On Defendant/Whalen's office wall, as he was yelling abusive threats, "Hart, I don't want you in here! And I am damn sure not going to do sh*t for you! So get your Black-#ss the F#ck out of here, now! And don't come back in here again! Or you will go to the hole, just try me, Hart!!" This was to provoke me into an physical confrontation.

4.  I thought it was disturbing for the Defendant-Case Manager/Whalen to place an Picture/Poster of my father an Death-row inmate (Mumia Abu-Jamal on his office wall.  This was observed by other inmates as being a personal vendetta or animosity towards me by Defendant/Whalen's provocative Picture/Poster of my father an Death-row inmate on his office wall.

5.  There was NEVER any Crack-Law article displayed with or around this condemning Picture/Poster of my Father/Mumia Abu-Jamal.

(Doc. 61, Ex. A, ¶'s 3.-5.).

Plaintiff also points to the above quoted September 26, 2007 letter FCI-Schuylkill Warden Sniezek wrote to Attorney Piper about Piper's contention that Plaintiff's case manager had a poster condemning Plaintiff's father.  (*See* Doc. 61, Ex. H).

The Court in *Brockington v. City of Philadelphia*, 354 F. Supp.2d 563, 567-68 (E.D. Pa. 2005), stated as follows:

> The doctrine of qualified immunity provides that "law enforcement officers acting within their professional capacity are generally immune from trial 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Wilson v. Russo,* 212 F.3d 781, 786 (3d Cir.2000) (quoting *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). The qualified immunity defense involves a two-step analysis.

> First, a court must "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Wilson,* 212 F.3d at 786 (citation omitted). Second, if plaintiff has alleged such a deprivation, a court should "proceed to determine whether that right was clearly established at the time of the alleged violation." *Id.* This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Curley v. Klem,* 298 F.3d 271, 277 (3d Cir.2002) (quoting *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). A constitutional right is established if it is sufficiently clear and well-defined so that "a reasonable official would understand that what he is doing violates that right." *Carswell v. Borough of Homestead,* 381 F.3d 235, 242 (3d Cir.2004) (citations omitted). Even if a reasonable official would so understand, the defendant may still be shielded from liability if he made a reasonable mistake as to what the law requires. *Id.*

Although it is important to resolve qualified immunity questions at the earliest possible stages of litigation, the importance of resolving qualified immunity questions early "is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right." *Curley v. Klem,* 298 F.3d 271, 277-78 (3d Cir.2002). A decision as to qualified immunity is "premature when there are unresolved disputes of historical facts relevant to the immunity analysis." *Id.* at 278.

Further, "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ' *Showers v. Spangler,* 182 F.3d 165, 171 (quoting *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 1699-1700, 143 L.Ed.2d 818 (1999) and *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed .2d 396 (1982)).

When addressing qualified immunity claims, the court must proceed in a two prong analysis. *Id.; Sharrar v. Felsing,* 128 F.3d 810, 826 (3d Cir.1997); *see also Rouse v. Plantier,* 182 F.3d 192 (3d Cir.1999) (setting forth the same general standard for analyzing qualified immunity, but in a three step inquiry). First, the court must determine if the conduct alleged by the plaintiff violated a clearly established constitutional right. *Id.; see also Johnson v. Horn,* 150 F.3d 276, 286 (3d Cir.1998). If so, the court must then determine if the unlawfulness of the conduct would have been apparent to an objectively reasonable official. *Id.* Thus,"whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citation omitted).

Therefore, "[u]nless plaintiff's allegations state a claim of a violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *P.F. v. Mendres,* 21 F.Supp.2d 476 (D.N.J.1998) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

In Count 7 of his Complaint, Plaintiff alleges that Defendant Whalen's actions "in racially

Harassing Plaintiff (a[n] African/american inmate), by Posting a poster of Plaintiff's Father (Whom

is Mumia Abu-Jamal - a Political Prisoner who resides in a Pennsylvania State Prison on "Death-Row") Picture on his office wall for purpose of ridicule and intimidation based on Plaintiff's Father and his [r]ace [and] Political views constituted Racial Discrimination in violation of the Equal Protection Clause of the Fifth Amendment to the United States Constitution." (Count 7, Doc. 1, p. 25, ¶ 85.).

The Equal Protection Clause of the Fourteenth Amendment requires all persons "similarly situated" to be treated alike by state actors. *See City of Cleburne, Tex. V. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Yan v. Penn State University*, 2010 WL 3221828, *4 (M.D. Pa. 8-13-10). While the Fifth Amendment does not contain an equal protection clause applicable to federal actors, the Fifth Amendment's Due Process Clause has been interpreted to contain an equal protection element, which proscribes racial discrimination to the same extent as the Fourteenth Amendment's Equal Protection Clause. *See Washington v. Davis*, 426 U.S. 229, 239 (1976). Hence, we will utilize the Fourteenth Amendment's framework in analyzing the Fifth Amendment equal protection claim Plaintiff asserts against Defendant Whalen, *i.e.* in Count 7.

To state an equal protection claim a plaintiff must allege that: (1) he was a member of a protected class; (2) he was treated differently from similarly situated persons outside of his protected class; and (3) the discrimination was purposeful or intentional rather than incidental. *Id.*, *See also Banks v. One or More Unknown Named Confidential Informants of Federal Prison Camp Canaan*, 2008 WL 2563355 *9 (M.D. Pa.); *Tillman v. Lebanon County Corr. Facility,* 221 F.3d 410, 423-24 (3d Cir. 2000).

In *Mosca* v. *Cole*, 217 Fed. App'x. 158, 164 (3d Cir. 2007), regarding the plaintiff's equal protection claim, the Court stated that the plaintiff must allege that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment") (citing *Hill v. Borough of Kutztown*, 455 F.3d 255, 239 (3d Cir. 2006)). *See also D'Altilio v. Dover Tp., 2007 WL 2845073,* * 10 (M.D. Pa.). In *D'Altilio*, the Court stated that "a class-of-one plaintiff must allege the existence of similarly situated individuals whom the defendant treated differently than the plaintiff." 2007 WL 2845073, * 10 (citation omitted).

This Court has previously construed Plaintiff Hart as raising a class of one equal protection claim against Defendant Whalen. In *Olech v. Village of Willowbrook*, 528 U.S. 562, 564 (2000), the Supreme Court recognized a class of one equal protection claim when Plaintiff alleges that he has been irrationally singled out. *See Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 596-597, 128 S. Ct. 2146 (June 9, 2008).

In *Olech*, the Plaintiff did not allege that she was discriminated against based on her membership in an identifiable group. Rather, the Court found that Plaintiff Olech stated a cognizable "class of one" equal protection claim since she alleged that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564(citations omitted). "In *Olech*, a class-of-one claim was properly brought because the village required Plaintiff, for arbitrary reasons, to have a 33-foot easement for her water connection when the village only required a 15-foot easement for other property owners." *Yan v. Penn State University*, 2010 WL 3221828, *6.

Plaintiff Hart alleges that he was treated differently by Defendant Whalen, with respect to his custody security level, than others similarly situated based on who his father was. Plaintiff avers that Defendant Whalen arbitrarily refused to lower his CCS based on Defendant's disdain for his father and to prevent him from being transferred to a low security prison. Under this "class of one" theory, "a plaintiff states a claim for violation of the Equal Protection clause when he 'alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Mosca v. Cole*, 217 Fed. App'x. 158, 164 (3d Cir. 2007) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564); *Engquist, supra*.

The *Yan* Court quoted *D'Altilio v. Dover Twp*., 2009 WL 2948525, *4(M.D. Pa. 9-14-09), as follows:

> under the class-of-one theory, a plaintiff may advance an equal protection claim absent membership in a protected class if the plaintiff shows irrational and intentional differential treatment when compared with similarly situated individuals. This theory allows a plaintiff to assert an equal protection claim regardless of protected class when the government irrationally treats the plaintiff differently than similarly situated individuals. To assert a class-of-one claim, [plaintiff] must demonstrate that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment.

2010 WL 3221828, *4-*5.

The *Yan* Court also stated that "[a] "class-of-one" claim is predicated on the notion that a Plaintiff was treated differently by the government, not based on membership in a protected class, but simply arbitrarily." *Id*. at *5.

The Court in *Yan* also quoted *Engquist* as follows:

> "When those who appear similarly situated are nevertheless treated differently, the *Equal Protection Clause* requires at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are indeed being "treated alike, under like circumstances and conditions." *Id*, at 2152. "Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the *Equal Protection Clause* requires a rational basis for the difference in treatment. *Id.* (internal citations and quotations omitted.)

*Id.* at *5.

Defendant Whalen argues that Plaintiff Hart has failed to produce evidence which shows that he treated Plaintiff arbitrarily based on the newspaper article he undisputedly had on his office wall which included an article about Plaintiff's father. Defendant states in his brief as follows:

> Defendant admits having a copy of a newspaper article on his wall. It was an article copied on 8.5" X 11" paper that referenced the potential changes in the crack cocaine laws. (SMF 12-17.) [Doc. 51] Also appearing on the same copy was an article regarding Mumia Abu-Jamal. (<u>Id.</u>) As stated by Defendant, he did not handwrite any message across the article nor was he aware that Plaintiff was related to Mumia Abu-Jamal. (<u>Id.</u>) However, once Defendant learned weeks later of Plaintiff's issue with the article and the fact that Mumia Abu-Jamal was his father, Defendant removed the article from his office bulletin board. (SMF 12-17.) The record evidence does not support that Defendant Whalen's conduct was motivated to single Plaintiff out and treat him differently than other inmates. The act of merely hanging an article concerning the Plaintiff's father does not demonstrate any disparate treatment of Plaintiff with respect to any other inmate as Plaintiff was not deprived of any privilege, condition, or benefit incident to his incarceration from any other inmate. Further, the alleged statement on the article was directed to Mumia Abu-Jamal, not Plaintiff.

(Doc. 50, pp. 14-15).

Defendant argues that Plaintiff has not demonstrated through his evidence that he arbitrarily treated Plaintiff differently than any other inmate with respect to any aspect of his

confinement at SCI-Schuylkill.  Defendant also contends that he had a rational basis to hang the newspaper article on his office wall, namely since it addressed changes in the law regarding crack cocaine.  Defendant states that he had a rational basis to post on his wall the article on changes in the law regarding crack cocaine since he was responsible for sentence calculations.

Plaintiff states that his BOP file was full of information that Mumia Abu-Jamal was his father and that Defendant was well aware of this fact at the time in question.  Plaintiff also states that "[Defendant ] Whalen posted this picture of my father on his office wall for the purpose of provoking and harassing me.  He was trying to retaliation (sic) against me because he held ill-will towards me."  (Doc. 66).

Plaintiff argues that Defendant Whalen arbitrarily treated him differently based on who his father was when Whalen intentionally and unjustly inflated his custody/security classification score to prevent him from being transferred to a low custody facility, and that Whalen displayed an "animus towards Plaintiff by knowingly placing a poster/picture of his father Mumia Abu Jamal on his office wall to provoke and harass [Plaintiff ]."  (Doc. 60, p. 6, ¶ 21.).

We find that Plaintiff has failed to show the existence of inmates at FCI-Schuylkill who Defendant Whalen treated differently than Plaintiff, based on who Plaintiff's father was, with respect to determining their CCS.  In fact, as quoted above, the evidence shows how the prison staff calculated Plaintiff's CCS and how staff at first determined that he should be confined in a medium security prison.   (*See* Doc. 50-4, pp. 67-68 and p. 71).

Thus, the undisputed record shows that there was a rational basis for Plaintiff Hart's custody classification during the relevant time period. (Doc. 50-4, pp. 67-68 and p. 71).

Therefore, Plaintiff cannot maintain his class of one equal protection claim against Defendant Whalen since the record shows that his custody level was not arbitrarily determined by any prison staff.

Accordingly, we find that Plaintiff Hart has not stated "the existence of similarly situated individuals sufficient to support a class-of-one claim." *See D'Altilio, supra*. Since Plaintiff Hart has failed to show the existence of any such inmates and how these inmates were treated differently by Defendant Whalen, based on Plaintiff's father, when their CCS were determined, Defendant Whalen is entitled to qualified immunity with respect to Plaintiff's remaining class-of-one equal protection claim asserted in Count 7 of his Complaint.

**V. Recommendation.**

Based on the foregoing, it is respectfully recommended that Defendant Whalen's Summary Judgment Motion **(Doc. 48)** be granted, and that the Court enter judgment in favor of Defendant Whalen and against Plaintiff Hart.


$\underline{\textbf{s/ Thomas M. Blewitt}}$
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 7, 2011**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMAL HART, | : | CIVIL ACTION NO. **3:CV-08-0828** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WALTER WHALEN, | : | |
| | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **February 7, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen (14)
days after being served with a copy thereof. Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections. The briefing
requirements set forth in Local Rule 72.2 shall apply. A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge. The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                  **s/ Thomas M. Blewitt**

_____   **THOMAS M. BLEWITT**
                                                  **United States Magistrate Judge**


**Dated: February   7, 2011**